IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES

v.  CRIMINAL NO. 1:24-CR-42

STEPHEN DAVID SEEGER

### MOTION FOR RECONSIDERATION

Now comes Stephen David Seeger, by his attorneys, Thomas Dyer, Esq., and Dyer Law Offices, and Martin P. Sheehan, Esq., and Sheehan & Associates, PLLC, and file this Motion for Reconsideration of some aspects of the Court's Sealed Ruling of May 2, 2025.

### Introduction and Summary of Prior Ruling
### and Motion to Reconsider

The District Court has previously considered two motions to suppress evidence filed by Mr. Seeger. In a lengthy opinion, this Court held 1) that there was no warrant for the first seizure of materials on March 29, 2021; 2) that the lack of warrant rendered the search unconstitutional; and, 3) that the good faith exception recognized in United States v. Leon, 468 U.S. 897 (1984) did not apply to allow admission of evidence seized at that time. This last conclusion reflected the Court's determination that good faith principles can only be invoked to correct a deficient warrant.[1]

Still the Court found that application of the exclusionary rule was dependent on some form of deliberate, reckless or grossly negligent police misconduct where exclusion would likely have a deterrent effect and thus prevent similar future errors. In this regard, the Court characterized the conduct of West Virginia State Trooper Thunder Nicholson as merely negligent. As a consequence, the motion to suppress was denied.

---

[1] No exceptions to the warrant requirement were raised or found otherwise applicable. Sealed Order of May 2, 2025 at 12.

This motion primarily seeks reconsideration of 1) the conclusion that exclusion of evidence can be denied independent of a finding of good faith; and, 2) the conclusion that Trooper Nicholson was negligent. The Defendant also independently asks the Court to conclude based on United States v. Thomas., 908 F.3d 68 (4th Cir. 2018); and United States v. McKenzie-Gude, 671 F.3d 452 (4th Cir. 2011) that the failure of the affidavit to articulate a nexus between Mr. Seeger and "property at 310 Hilltop Drive, near Bruceton Mills, WV" renders the search improper. In support of this aspect of this motion, the Defendant acknowledges that there is no warrant. If there would have been a warrant, then the affidavit would have had a technical difficulty. There is no information in the affidavit that identifies 310 Hilltop Drive as Mr. Seeger's residence. This kind of technical problem was found curable where good faith applied. However, this Court previously found there could be no good faith in this case because there was no warrant. Thus, the failure of the affidavit to identify a nexus between Mr. Seeger and 310 Hilltop Drive is not capable of being cured by information known to the Trooper but not disclosed to a judicial officer. These cases make clear, that only where principles of good faith apply, can information beyond the four corners of the affidavit be considered as part of a good faith analysis.

In moving to reconsider, Mr. Seeger supplies transcripts of the body camera footage which were not available at the hearing, but are now. In addition, testimony of Trooper Nicholson offered in Preston County, and which impacts the issues before the Court, is being provided.

**Issues Preserved But for Which Reconsideration Has Not Been Requested**

The Defendant acknowledges that he did include in the motions to suppress some allegations of a violation of Franks v. Delaware, 438 U.S. 154 (1983). Mr. Seeger believes those allegations were properly made and have been improperly denied. Mr. Seeger has not sought reconsideration of that conclusion but does not intend to waive that argument by failing to include those matters

2

previously advanced as part of this motion to reconsider. Mr. Seeger understands the District Court found the allegations made by the Defendant were inadequate to warrant a hearing under the principle established in that case.

The second motion to suppress evidence sought exclusion of the results of a forensic examination of electronic devices conducted on April 19, 2021 of devices seized on March 29, 2021. This motion was primarily viewed as a motion to suppress "fruit of the poisonous tree" as alleged by the Defendant. Finding the evidence seized earlier to be admissible, that aspect of the motion was denied. He also argued that a warrant issued in Preston County was not properly issued to conduct a search of materials by the Forensic Laboratory in another county, namely Monongalia County. Again, Mr. Seeger believes those allegations were properly made and have been improperly denied. Mr. Seeger has not sought reconsideration of that conclusion but does not intend to waive that argument by failing to include his position in this motion to reconsider.

It also alleged that the motion was then denied on the grounds the search was proper.

### Defendant's Acknowledgment of General Legal Principles, including Disagreement with Portions of District Court Analysis

After conducting a hearing Chief Judge Kleeh found:

A.)   There was no warrant (Order at page 10);

B.)   The search was unconstitutional (Order at 17);

C.)   Good faith did not apply because there was no warrant (Order at 14).; and,

D.)   Exclusion is not always warranted on every showing of a Fourth Amendment error.

Ultimately, exclusion or suppression of evidence was denied.

The Defendant acknowledges that finding that exclusion is not always warranted for every showing of a violation of the Fourth Amendment is a correct statement of the law. Where the

application of the "good faith" exception applies, the good faith exception prevents automatic application of the exclusionary rule. Moreover, where police error is attenuated from the action that violated the Fourth Amendment, the exclusionary rule need not apply.

The Defendant does <u>disagree, however,</u> that a District Court may avoid application of the exclusionary rule where the good faith exception, as refined over time, does not apply. In the Defendant's view, the social cost of application of the exclusionary rule is a component of an analysis of "good faith" under existing law. There is no independent basis to deny a remedy where a finding of good faith is not made.

With respect to application of the exclusionary rule, the Defendant acknowledges that the good faith exception was recognized because of the high social cost of suppression of evidence that would otherwise be inculpatory. The cost of suppression where limited deterrence value arises from application of the rule underpins the good faith exception.

Over time, the good faith exception has narrowed what had largely been a more automatic application of the exclusionary rule on any finding of a constitutional violation. The existence of the good faith exception has also been further refined to only require application of the exclusionary rule where suppression of evidence will have a tendency to curb some form of "police misconduct." One aspect of a refined analysis requires the misconduct to be "police misconduct." Application of the exclusionary rule requires the failing to have been tied to police action. Failures by some other entity, such as the courts, will not suffice for suppression.

Even where the alleged misconduct was performed by some police agency, where such action is attenuated from the cause of a constitutional problem, the alleged attenuated conduct will not warrant suppression. This result flows because the attenuation limits the impact on deterrence.

Courts have determined there is deterrent value where police misconduct was a) intentional,

b) reckless and/or c) grossly negligent.

Under this highly detailed series of refinements of the good faith exception to the exclusionary rule, it could be that if police misconduct was merely negligent, then exclusion of evidence would not be required.

Despite the conclusion that good faith did not exist, Judge Kleeh did an independent analysis of whether he would apply the remedy of suppression. He opined that there would be inadequate deterrence to exclude evidence and denied the motions to suppress.

As part of this conclusion, he also determined that Trooper Nicholson was merely negligent. The Defendant would suggest this was an incorrect finding as well.

The Defendant understands that significant judicial energy has been expended in making rulings on the Motions to Suppress. Respecting that effort, the Defendant herein provides some additional legal analysis and offers some clarifying materials only on narrow aspects of the prior ruling.

## The Social Costs of Suppression Are Only a Factor to Consider When Good Faith Exists

In <u>United States v. Leon</u>, 468 U.S. 897 (1994), the Supreme Court considered application of the exclusionary rule where an affidavit for a search warrant was vetted by prosecutors and submitted to a neutral judicial officer. The Magistrate issued a warrant. Evidence was seized. But when a motion to suppress was filed, the District Court determined that probable cause was lacking. Still, it was clear that the officer had acted in reliance on the existence of a properly issued warrant and had demonstrably acted in good faith.

The Court in a 5-4 opinion noted that the exclusionary rule was a judge made remedy devised to deter police misconduct. The Court recognized this rule was being applied broadly, and

in circumstances where the value of deterrence on future behavior was unclear. Reference to the social cost of the remedy of suppression was mentioned. The Court outlined that the use of the exclusionary rule was being limited in various ways. For example, even where the exclusionary rule applied, evidence that had been suppressed could still be used for impeachment of a defendant's direct testimony. Other inroads to complete suppression were recited.

Recognizing that the role of a neutral and detached magistrate would guard against the hurried judgment of police intent on ferreting out crime, the Court recited the preference for warrants. Where warrants exist, deference to the decision of such persons on close questions of probable cause was sensible. That kind of deference could not be limitless. Instead, the Court ruled that falsity in affidavits should still be examined. Magistrates should also function as neutral and detached individuals. Rubber stamping applications could not be tolerated. Affidavits must not be wholly lacking in a basis for finding probable cause. "Bare bones" affidavits would still support suppression.

The Court noted that suppression of evidence had at its origin been designed to deter police misconduct. Errors by the judiciary did not justify the exclusion of evidence. There seemed to be no basis for finding judges and magistrates would ignore or subvert the Fourth Amendment. Because the deterrent effect that exclusion of evidence was designed to cause would be limited in excluding evidence, the Court found no rational support for deterrence absent some police misconduct.

In a lengthy dissent, Justice Brennan expressed his view that certain minimum actions would be taken to cause proper warrants to issue, and to be properly executed. He said that well-trained and experienced police officer should check "that a warrant they have been issued at least describes those things for which they have sought leave to search. Id. at 948.

In Herring v. United States, 555 U.S. 135 (2009), the Supreme Court considered whether the good faith of officers in one police agency on information obtained from a different police agency required suppression. Mr. Herring originally sought to recover a vehicle which had been towed. He asked to obtain his vehicle from a Sheriff's department in Coffee County. That police agency asked its separate sister agency, the Sheriff of Dale County, if it had any information concerning Mr. Herring. An employee of the Dale County Sheriff reviewed a computer database maintained by the Sheriff. Based on that review, a Coffee County employee was advised that Mr. Herring was the subject of an outstanding warrant for failure to appear. On the strength of that information, Mr. Herring was arrested by the Coffee County Sheriff's Office. A search, incident to that arrest, resulted in the discovery of methamphetamine, and a firearm. Possession of the firearm by Mr. Herring was unlawful because he was a previously convicted felon. The predicate for the arrest, the existence of an outstanding warrant proved incorrect almost immediately. When Coffee County requested a copy of the Dale County warrant but no such warrant could be found. While a warrant had been issued at one time, the warrant had been recalled months earlier. The database had not been updated.

A motion to suppress was denied and that decision was affirmed on appeal. The United States Supreme Court upheld that outcome. It reasoned that the Coffee County Sheriff had relied in objective good faith on what proved to be inaccurate information obtained from Dale County officials. The Court said that application of the exclusionary rule did not automatically flow from a violation of the Fourth Amendment, but depended on the culpability of the police and the value of deterrence that would arise from exclusion. The Court acknowledged the error was attributable to a police agency, but found the information was sufficiently attenuated from the actions of the arresting officers in Coffee County. The Court concluded that little to no deterrence would result

from application of the exclusionary rule because of an error in Dale County. The Supreme Court wrote that to trigger the exclusionary rule, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it and sufficiently culpable that deterrence is worth the price paid by the justice system." Id. at 144. Nothing in Herring superseded the foundations of "good faith." It certainly did not authorize an independent basis for denial of a suppression motion. It merely found that the conduct here, albeit police conduct, did not reflect culpable misconduct by the agency or its officers primarily responsible for the challenged police action.

### Trooper Nicholson Was Either Not Well Trained and/or Did Not Act as a Well Trained Law Enforcement Officer

In the wake of Leon the notion of a good faith exception to application of the exclusionary rule has also depended on a foundational predicate. Specifically, the good faith exception requires "well-trained and experienced police officers" focused on honoring the terms of warrants that have issued. United States v. Ray, 141 F.4th 129 (4th Cir. 2025).

Here, Trooper Nicholson indicated that he had been on the job two years and two months when he conducted the search in this case. (Transcript at 22) He was not assigned to any specialized unit like "Internet Crimes Against Children." Instead he was responsible for general calls. (Transcript at 20). Over time he believed that had sought approximately two dozen warrants. (Transcript at 27). All of those were sought in Magistrate Court.

In this particular situation, the Trooper discussed obtaining a warrant with his supervisor. His supervisor advised him to get a warrant from a "court of record." (In West Virginia, Circuit Courts are such courts, but Magistrate Courts are not.)

The supervisor supplied a template[2] to use in crafting an affidavit for use in Circuit Court. There is no difference between a warrant issued in Magistrate Court and in Circuit Court in West Virginia. The implication from the supervisor's command to obtain a warrant from a Court of record depends on some fundamental misunderstanding about the validity of warrants obtained from Magistrates. This odd, and faulty, premise suggests some police officer was not adequately trained. Somehow in this variation from the ordinary process of obtaining a warrant, Trooper Nicholson failed to appreciate that by using an individualized template, instead of the general template designed for affidavits and warrants, no proposed search warrant form would be created. The supervisor does not appear to have recognized that possibility either.

If he did, he did not communicate that to Trooper Nicholson. As the Court has previously determined, no proposed warrant was signed by Judge Shaffer.[3] It appears this occurred primarily because Judge Shaffer was not supplied with a proposed warrant.

To execute the search, Trooper Nicholson took another officer, Trooper Morris, to assist in

---

[2] Template may be an overstatement. The supervisor supplied a copy of an affidavit that had been previously used to obtain a warrant from a Circuit Judge. (Transcript at 27)

[3] The template/form in use for obtaining a search warrant from a West Virginia Magistrate was submitted as part of the Motion to Suppress the March 29, 2025 search. Consistent with Trooper Nicholson's explanation (Transcript at 27-28.) the template/form for an affidavit and search warrant is similar. It is designed for the officer seeking a warrant to prepare an affidavit and proposed search warrant for presentation to a judicial officer.

The preparation by law enforcement of a proposed warrant appears to be general practice. It is discussed, inter alia, in Messerschmidt v. Millender, 565 U.S. 535 (2012); Doe v. Broderick, 225 F.3d 440 445 (4th Cir. 2000); United States v. Ray, 141 F.4th 129 (4th Cir. 2025); United States v. SDI Future Health, Inc., 568 F.3d 684 (9th Cir. 2009); United States v. Moore, 968 F.2d 216 (2nd Cir. 1992)

As such a reasonably competent public official should know the law governing his conduct. See Kelly v. Borough of Carlisle, 622 F.3d 248, 254 (3rd Cir. 2010)(applying good faith immunity from suit) relying on Harlow v. Fitzgerald, 457 U.S. 800 (1982).

9

the search. Because there was no warrant, it would have been impossible for Trooper Morris to independently refer to the warrant to know what the Court had theoretically authorized to be seized.

When Mr. Seeger inquired of Trooper Nicholson if the Trooper had a warrant to search Mr. Seeger's home, Trooper Nicholson said yes, and that he would provide a copy to Mr. Seeger when the search was complete. This existence of a warrant appears to have been a false representation. The Government, in resisting the motion to suppress, seems to have portrayed that falsity as an isolated problem. The Court seems to have concluded that the deterrence to be obtained from exclusion is minimal.[4]

But misrepresentation of the existence of a warrant is surprisingly a broader problem that arises with some regularity. Most such cases arise where the Government asserts there was consent to search, and the consent was obtained after some reference to a warrant is made by the police. A few such cases warrant specific discussion.

The seminal case is Bumper v. North Carolina, 391 U.S. 543 (1968). There the police falsely told the defendant's grandmother that they had a warrant to search her home, and believing them, she did not object to the search. The Court noted that "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search." Id. at 550. As such, any "consent" given after the officer has asserted that he possesses a warrant is not valid. Id. at 548. The Bumper Court held that the officers violated the Fourth Amendment and that the evidence should have been suppressed in that case. In 1968, the Court did not discuss whether the false information was supplied intentionally, although it appears

---

[4] Mr. Seeger does not believe that any analysis of Trooper Nicholson's culpability is material to the inquiry. But, if that principle is to be applied, as it has been, Mr. Seeger believes the actions of Trooper Nicholson are sufficiently culpable to require exclusion of the search.

that reciting the existence of a warrant when there was none, must have been intentional.

Similarly, in <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir.2001) the Court of Appeals held that consent given by a suspect to a search after the suspect was falsely told that the FBI had a search warrant was invalid. <u>See also</u>, <u>United States v. Saafir</u>, 754 F.3d 262, 266 (4th Cir.2014). There the Court held that a search or seizure is unreasonable and therefore unconstitutional if it is premised on a law enforcement officer's misstatement of his or her authority. In this case, the officer asserted that he had probable cause to search anyway. (This assertion was conceded to be false at oral argument.) The opinion suggests that the claim may have been understood as a threat by the police to violate the Fourth Amendment.

It is hard to determine if any of those cases involved a misstatement resulting from a sincere but mistaken belief, or if these cases involve more culpable efforts to deceive. In this regard, however, a misrepresentation based on a guess was found problematic in <u>United States v. Shaw</u>, 707 F.3d 666 (6th Cir.2013). There, the Court outlined that officers had an arrest warrant for a suspect residing at 3171 Hendricks Avenue in Memphis, Tennessee. However, when the officers arrived near that address, they found two houses labeled 3170 Hendricks Avenue and none with the 3171 address. The officers approached one of the homes (which was actually 3170 Hendricks Avenue) and told the woman who answered the door that they had a warrant "for this address." The woman then allowed the officers to search the home, which led to the discovery of illegal drugs and the arrest of one of the occupants. Although the officers had a "fifty-fifty chance of being right," they were ultimately incorrect. They had obtained entry into the wrong house based on what the Court of Appeals said was a false pretense - a representation of the existence of a warrant for that particular address. The Sixth Circuit held that the officers violated the Fourth Amendment and excluded the evidence obtained through the search. The Sixth Circuit underscored that "so long as

11

there is an exclusionary rule, it seems safe to say that it will apply to officers who enter and remain in a house based on false pretenses."

The opinion credits the view that the officers had a warrant, but a warrant with a defective address. When the police guessed which of the two houses was intended to be searched, the police guessed incorrectly. Their actions were described by the Court of Appeals for the Sixth Circuit as "false pretenses." That a crime in Tennessee where the search was conducted. State v. Gentry, 538 S.W.3d 413 (Tenn. 2017).

Good faith immunity was also denied to a police officer in a civil rights case known as Taylor v. Hughes, 26 F.4th 419 (7th Cir. 2022). There the apartment identified by apartment number in a warrant was not searched. Instead, a different apartment identified not objectively to the Magistrate, but by an informant on the scene was searched. Good faith immunity was denied the officer responsible.

These opinions reflect the importance of accurate responses to inquiries about the existence of a warrant. When one exists, no lawful objection can be made at the scene. Perhaps, an objection or motion for return of property can be filed subsequently, but at the scene, obedience to the command of the warrant is required.

Here, Mr. Seeger would have had a lawful right to resist execution of the search on the grounds that no warrant had been issued. Instead, he complied with the officer's claim of proper authority.

WHEREFORE, the Defendant asks that the motions to suppress be reconsidered and granted, and for such other relief as may be warranted.

Respectfully submitted,

| | |
|---|---|
| */s/ Thomas G. Dyer* | */s/ Martin P. Sheehan* |
| Thomas G. Dyer, Esq. | Martin P. Sheehan, Esq. |
| W.Va. Bar No. 4579 | W.Va. Bar No. 4812 |
| Dyer Law | Sheehan & Associates, PLLC |
| 347 Washington Avenue | 1140 Main St. |
| Clarksburg, WV 26302 | Suite 333 |
| (304) 622-1635 | Wheeling, WV 26003 |
| (304) 6242-9334 fax | (304) 232-1064 |
| dyerlawof@aol.com | (304)232-1066 fax |
| | Martin@MSheehanLaw.net |
| | Paralegal@MSheehanLaw.net |

**CERTIFICATE OF SERVICE**

I, Thomas G. Dyer, did file this document with the Clerk of the District Court for the Northern District of West Virginia on this 11th day of September, via CM/ECF. That caused service to be made on Assistant United States Attorneys Andrew R. Cogar, Kimberley D. Crockett, and Morgan McKee, at their e-mail addresses of record.

>/s/ *Thomas G. Dyer*
> Thomas G. Dyer, Esq.
> W.Va. Bar No. 4579
> Dyer Law
> 347 Washington Avenue
> Clarksburg, WV 26302
> (304) 622-1635
> (304) 6242-9334 fax
> dyerlawof@aol.com