UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF WEST VIRGINIA

United States of America,
     Plaintiff,

          VS.                CRIMINAL ACTION NO.
                               1:24-cr-42

Steven David Seeger,

     Defendant.

                    - - -

    Proceedings had in the plea hearing of the above-styled action on May 12, 2025, before Honorable Michael John Aloi, Magistrate Judge, at Clarksburg, West Virginia.

                    - - -

    APPEARANCES:

    On behalf of the United States of America:

    Kimberley D. Crockett (via videoconference)
    Daniel Lee Salem (via videoconference)
    Assistant United States Attorneys
    United States Attorney's Office
    217 W. King Street, Suite 400
    Martinsburg, WV  25401
    304.281.5452

    On behalf of the Defendant:

    Thomas G. Dyer
    Dyer Law Offices
    PO Box 1332
    Clarksburg, WV  26302-1332
    304.622.1635

    Martin P. Sheehan
    Sheehan & Associates, PLLC
    1140 Main Street, Suite 333
    Wheeling, WV  26003
    304.232.1064

    The defendant was present in person.

    Proceedings recorded utilizing tape.
    Transcript produced by computer-aided transcription.

Monday Afternoon Session,

May 12, 2025, 2:08 p.m.

- - -

THE COURT:  If the clerk would please call the next case.

THE CLERK:  United States of America versus Steven David Seeger, Criminal Case Number 1:24-CR-42.  Mr. Seeger is present in person.

Counsel, please note your appearance for the record.

MR. SALEM:  Daniel Salem on behalf of the United States.

MS. CROCKETT:  Also appearing is Kim Crockett.

THE COURT:  Okay.  Thank you, counsel.

MR. DYER:  Martin Sheehan and Tom Dyer for the defendant.

THE COURT:  Let me say for the record, as the parties are aware, we had previously had this scheduled for a plea proceeding and we got into the proceedings somewhat on two different occasions and then thought it was best to continue the plea hearing.  I only give that as a backdrop, because at that time the Court indicated that counsel for the government, the Assistant US Attorneys, could appear for this plea by video, since it's a long trip for them from Martinsburg.  And there was no objection by the defendant; is that correct Mr. --

MR. DYER:  That's correct, Your Honor.

THE COURT:  And so with that, that's why they're appearing, with permission of the Court, and there being no objection by the defendant.

So Mr. Dyer, it's now my understanding that Mr. Seeger does desire to plead guilty to Count 1 and Count 4 of the indictment?

MR. DYER:  That is correct, Your Honor.

THE COURT:  Count 1 charging him with coercion and enticement of a minor for sex, and Count 4, production of child pornography.

MR. DYER:  Yes, sir.  Yes, sir.

THE COURT:  Mr. Seeger, would you please stand, raise your right hand, and be sworn by the clerk.

(Defendant sworn.)

THE COURT:  Mr. Seeger, do you understand that you're now under oath, and that if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or for making a false statement?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand that if you lie, it may result in a higher sentence for you?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, Mr. Seeger, during the course of this hearing, I will be asking you several questions.  At any point you should feel free to ask questions, ask for an

explanation if you do not understand any of my questions, or ask me to pause the proceedings so that you may discuss matters with your lawyers before answering the question.  Do you understand that, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  And Mr. Seeger, I'll be asking you a lot of questions.  If at any time, Mr. Seeger, you have any questions about anything, your answer with any question, all you need to do is say, Judge, may I speak with my lawyers. I'll give you the opportunity to do so.  And then after you do it, we'll address it on the record.  You may not feel the need to do that at all, Mr. Seeger.  You may feel the need to do it several times.  And if you do, that's just fine.

So Mr. Seeger, would you state your full name for the record, please.

THE DEFENDANT:  Steven David Seeger.

THE COURT:  How old are you, Mr. Seeger?

THE DEFENDANT:  46.

THE COURT:  How much education have you had?

THE DEFENDANT:  I have a master's degree in computer science.

THE COURT:  So can you read, write, and understand English?

THE DEFENDANT:  Yes.

THE COURT:  And again, Mr. Seeger, I ask these

questions because I'm required to make a finding on the record that you're competent.

Mr. Seeger, have you recently been under the care of a doctor or psychiatrist or other medical professional for any serious physical or mental illness, including addiction to drugs or alcohol?

THE DEFENDANT:  No.

THE COURT:  Are you currently using any form of controlled substance or any medication or alcohol that might affect your ability to understand this proceeding today?

THE DEFENDANT:  No.

THE COURT:  Mr. Dyer, do you have any reason to question the competence of your client, Mr. Seeger?

MR. DYER:  I do not, Your Honor.

MR. SHEEHAN:  Your Honor, as a matter of fact, I think we said this before, we had Mr. Seeger examined by a psychologist, Dr. Saar.  He's reported to us that he was fine, in his opinion, and as a result, we have no such reservations that Mr. Seeger -- I thought I'd augment the record in that particular way.

THE COURT:  Thank you, Mr. Sheehan.

So Mr. Seeger, are you here today to enter a guilty plea as part of a written plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, I find that you're competent

and capable of entering an informed plea.

Ms. Crockett -- they have presented to me, Mr. Dyer, a -- it's I guess a new plea agreement, perhaps where you changed a few things in it.  They have all signed it it.  But I don't have one with your signature on it, so -- what's your position on that?

MS. CROCKETT:  Your Honor, if it was signed in advance, I asked that a PDF be emailed to me and I would affix my signature to it and send it back to the Court.  We can still do it that way.  I'm not allowed to execute the plea agreement.

THE COURT:  I understand, Ms. Crockett.  Just send it to your normal email address?

MS. CROCKETT:  That's fine, Your Honor.  You can also send it to Dan Salem.  I have another matter that starts at 3:00, and I couldn't anticipate how long this hearing would take.

THE COURT:  I understand.

MS. CROCKETT:  He's going to take the lead for the government.

THE COURT:  Mr. Salem, what is your email address?

MR. SALEM:  And, Your Honor, that's Daniel.Salem, just like Salem, Massachusetts, at usdoj.gov.

THE COURT:  Okay.  Thank you.

Ms. Ridgeway, if you don't mind, if you would come down to the courtroom, we will go ahead, email this copy, email

it directly to Mr. Salem and Ms. Crockett, and then if you all would sign it and email it directly to Nakia Ridgeway and she'll bring it right to me.

Okay.  So now the other thing is this one is dated, Ms. Crockett, April 10th.  They signed it today, May 12th.  I didn't know how you want to handle that.  I don't think it matters, Mr. Dyer, but go ahead.

MS. CROCKETT:  In the "regarding" line, it should say that it was amended the date that below was amended, but the date that it's signed by Mr. Seeger is of no consequence, because he won't receive timely acceptance.

THE COURT:  Okay.  And that's understood?

MR. DYER:  Yes, it is, Your Honor.

THE COURT:  Okay.  So we're going to get --

So Mr. Seeger, I am a United States Magistrate Judge. Did I give you all the consent?

THE DEFENDANT:  I think I signed it twice before.

THE COURT:  This is a new day, new proceeding, Mr. Seeger, so --

THE DEFENDANT:  I really don't understand it.  I mean, Article III establishes the Supreme Court and allows Congress to create any other courts that it so deems to do, and the Federal Magistrate Act created your position just as well as -- I believe it was called the congressional -- I forget.  I think it was 1789 when Congress established the District

Courts.  So how are you any less an Article III Judge than Judge Kleeh?

MR. SHEEHAN:  He does not have life tenure.

THE COURT:  Although there's some differences -- I appreciate that -- I appreciate the promotion, Mr. Seeger, and I don't know how influential it would be on others, but your lawyers are right.  At least if it's a guilty plea to a felony, I can hear it, but I can only hear it with your consent, so we've had a good discussion about that.  Are you agreeable for me to hear your plea today?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  And have you discussed that with your lawyers?

THE DEFENDANT:  Yes, sir.

THE COURT:  And is that correct, Mr. Sheehan and Mr. Dyer?

MR. SHEEHAN:  Yes, Your Honor.

THE COURT:  I'm getting the waiver down here.

And Mr. Seeger, I understand what you're saying, but I think it's important, to keep things clean, that we have a waiver form of today's proceedings, and so I will order that be filed herein, once we get it signed, and my clerk will bring it down, but we'll continue.

Mr. Seeger, do you understand you have a right to be represented by counsel at every stage of these proceedings,

including sentencing, and if you can not afford counsel, you have the right to have an attorney appointed to represent you?

THE DEFENDANT:  Yes, sir.

THE COURT:  And Mr. Dyer, do you or any member of your office or firm represent anyone who might be interested in the outcome of this matter?

MR. DYER:  Do not, Your Honor.

THE COURT:  Same for you, Mr. Sheehan.

MR. SHEEHAN:  I do not, Your Honor.

THE COURT:  Mr. Seeger, when I ask this question, I'll use your attorneys in the plural.  So have you had adequate time to discuss your case fully with your attorneys, Mr. Dyer and Mr. Sheehan?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have they been able to answer your questions about how best to proceed in this case?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, is there anything that your lawyers have not done which they've asked you to do?  Which you've asked them to do.  I'm sorry.  Let me ask that again.

Is there anything that your lawyers have not done that you've asked them to do?

THE DEFENDANT:  Yes, but I'm sure that always happens.

THE COURT:  Okay.  And so, for example --

THE DEFENDANT:  None that would impact my decision to plead guilty today.

THE COURT:  Well, and let me say that.  I think that's a fair response.  Certainly there can be things that you ask your lawyers to do and they have a discussion with you that they either believe they can't do it under their roles as professionals, or they have discussions with you and a decision is made, we could do that, but we're of the opinion that it would have no impact on the case, and then you're satisfied with that explanation.  So are you satisfied that your lawyers have done what you've wanted them to do to the extent that it would make a difference in the outcome of this case?

THE DEFENDANT:  Yes.

THE COURT:  Are you completely satisfied then with the legal advice that you've received from your attorneys?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Dyer, during the time that you've represented Mr. Seeger, has he been cooperative with you?

MR. DYER:  He has, Your Honor.

THE COURT:  And Mr. Sheehan.

MR. SHEEHAN:  Yes, Your Honor.

THE COURT:  And Mr. Dyer, have you and Mr. Sheehan had time to discover the government's case?

MR. DYER:  We have, Your Honor.

THE COURT:  Have you had adequate time to consider

possible defenses?

MR. DYER:  Yes, sir.

THE COURT:  And do the two of you know of any viable defense to the charges in Count 1 and 4 of the indictment?

MR. DYER:  In the wake of the motion hearing, unfortunately, the answer is no.

THE COURT:  And you're referring to -- I know y'all made a motion to suppress.  The Court denied it; is that correct?

MR. DYER:  Correct, yes, sir.

THE COURT:  Have you had adequate time to consider possible sentences?

MR. DYER:  Yes, sir.

THE COURT:  And have you discussed all of these issues with your client, Mr. Seeger?

MR. DYER:  We have.

THE COURT:  I know you all signed the waiver.

MR. DYER:  Yes, sir.

THE COURT:  So if you'll present it to me and we'll go ahead and get that taken care of.

So Mr. Seeger, I do have the original waiver of Article III and consent to enter your guilty plea before a US Magistrate Judge.  Did you sign it, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  And did you discuss it with your

lawyers?

THE DEFENDANT:  Yes, sir.

THE COURT:  And Mr. Dyer, is it your understanding your client is agreeable -- I'm sorry, that your client's agreeable to the waiver?

MR. DYER:  Yes, I do.

THE COURT:  I'll note the signature of Mr. Seeger as well as Mr. Dyer and Mr. Sheehan.

At least for the record, Ms. Crockett and also Mr. Salem, do you concur with this waiver and consent?

MR. SALEM:  We do, Your Honor.

THE COURT:  Okay.  I will note that on the record and we will make sure it either gets to you, Ms. Crockett, or Mr. Salem, to make sure that that gets signed.

And Ms. Crockett, I do understand that you -- have you now received an email with the plea agreement signed?

THE LAW CLERK:  Judge, it should be in their inbox here in the next minute or so.

THE COURT:  Okay.  So Mr. Dyer, is there a proposed plea agreement in this case?

MR. DYER:  Your Honor, there is.

THE COURT:  Ms. Crockett, would you please summarize the contents of that agreement.

MR. SALEM:  Your Honor, if it's all right with the Court, I, Daniel Salem --

THE COURT:  That's fine.  Then Mr. Salem, if you would please summarize the contents of the agreement.

MR. SALEM:  Certainly, Your Honor.  The plea in this matter was originally offered on April 10th, 2025.  It was also amended on May 6, 2025.  It was signed by the defendant and his counsel today, May 12th, '25.  It is in letter form, over 18 numbered paragraphed on eight pages.  It bears no modifications.  Defendant and defendant's counsel have signed and dated the bottom of each page.  That is our understanding based on the proceedings that occurred in court there today.

Paragraph one holds the defendant will plead guilty to Count 1, coercion/enticement of a minor for sex, in violation of Title 18, United States Code, Section 2422(b), and also to Count 4, production of child pornography, in violation of Title 18, United States Code, Sections 2251(a) and (e).

Paragraph two states that the penalty the defendant will be exposed to as a result of his guilty plea to Count 1 is imprisonment for a period not less than ten years and not more than life in prison, a $250,000 fine, and at least five years and up to lifetime of supervised release.

The penalty defendant will be exposed to as a result of his guilty plea to Count 4 is imprisonment for a period of not less than 15 years and not more than 30 years, a fine of $250,000, and at least five years and up to a lifetime of supervised release.

It also explains that there's a special mandatory assessment of $100, and if determined to be applicable, as a matter of law, there's an additional special assessment under the Justice for Victims of Trafficking Act of $5,000, and up to $5,000 for Amy, Vicky and Andy Child Pornography Assistance Act.

Paragraph three explains that pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties have agreed to a binding condition that Counts 1 and 4 will run concurrently to one another, and the sentence for each shall be capped at a maximum of 30 years' imprisonment.  If the Court does not accept the binding provision, the defendant shall have the right to withdraw his plea of guilty.

Paragraph four requires the defendant to be completely forthright and truthful with regard to all inquiries made of him and to submit to polygraph examination if requested to do so.

Paragraph five explains that no statement or testimony given by defendant under paragraph four will be used against him as the basis for a subsequent prosecution, nor may be used in the present case to determine the defendant's applicable guideline range.

The agreement does not prevent defendant from being prosecuted for any violations of other federal and state laws he may have committed if evidence of other violations is

obtained from an independent, legitimate source.  Nothing in this agreement prevents the United States from prosecuting the defendant for perjury or for giving a false statement.

Paragraph six holds that at sentencing, the United States will advise the Court of defendant's forthrightness and truthfulness or his failure to be so.  The United States agrees to dismiss the remaining counts at sentencing.  If the defendant's sentence is remanded for a new trial, all counts dismissed pursuant to the plea agreement will be reinstated.

Paragraph seven explains the United States and law enforcement agencies have not made any representations as to what the final disposition in this matter should and will be. Aside from the binding recommendation provided for in paragraph three, this is a nonbinding plea agreement and defendant has no right to withdraw his plea if the Court does not follow any sentencing recommendation set forth in the agreement.

Paragraph eight holds that the United States will make the following nonbinding recommendations:  It will recommend a two-level reduction for acceptance of responsibility if defendant accepts responsibility in the opinion of the United States Attorney's Office and the probation office recommends such a reduction.  The plea agreement expires upon notification of the District Court's ruling on the suppression motions which occurred on April 16th, 2025.  However, the parties went forward and amended the

relevant conduct stipulation and changed it so that if the plea is executed by May 12th, 2025, it is agreeable to the government but is not considered timely accepted.  It will further recommend a sentence of imprisonment of at least 15 years but not more than 30 years.

Paragraph nine holds that the United States is not bound to make the sentencing recommendations if defendant engages in conduct defined under the applicable notes of Guideline 3C1.1, fails to cooperate as promised, or violates any other provisions of the plea agreement, and the defendant will not have the right to withdraw the plea.

Paragraph ten holds that pursuant to Sections 6B1.4 and 1B1.3 of the guidelines, the parties hereby stipulate and agree that on March 29th, 2021, West Virginia State Police received a lead that the defendant was involved in an online relationship with a minor.  The lead noted the defendant exercised ownership over the minor, even enticing her to send nude photographs of herself to him using a computer.

On March 29th, 2021, West Virginia State Police executed a search at defendant's residence located at 310 Hilltop Drive, Bruceton Mills, West Virginia.  Defendant was interviewed during the search of his residence and said he received videos from the minor but that she was lying about her age, and he deleted the images and never asked for more until after she was 18 years of age.

The West Virginia State Police digital forensic lab located images, video, and conversations on two of the items seized from defendant that contained child sexual abuse materials. On defendant's silver apple MacBook was a 34-second video that was created on June 25th, 2013, at defendant's demand. It contained Jane Doe Number One masturbating utilizing a Crayola marker. On the black LG nexus smartphone, there were 50 images of child sexual abuse material, two videos of child sexual abuse material, and eleven images of child erotica.

The images were linked to conversations that defendant was having with two minor females who clearly identified themselves as minors. West Virginia State Police digital forensics lab analysis established the devices contained images and videos of minor females performing masturbation applying clotheslines to their nipples and labia, writing "Steven's slut" on their abdomens, and general nude images identified as child erotica.

One such video produced at defendant's enticement is one minute and five seconds and depicts Jane Doe Number Two masturbating with her fingers with the camera close to her genitals before ending by capturing her face.

Visual depictions produced at defendant's enticement were produced knowing that they would be transmitted in interstate commerce by computer from the minors to defendant.

The chat communications tied to the images established defendant's knowledge that they were minors and he, in fact, enticed them for more.

All offense conduct was committed within the Northern District of West Virginia and elsewhere.  These are the only facts to which the parties agree.  Any other facts relative to the nature and circumstances of the offense may be argued by the parties at sentencing.

The paragraph also states that the Court is not bound by the parties' stipulation and defendant understands that should the Court not accept the stipulation, the defendant will not have a right to withdraw the plea of guilty.

Paragraph eleven contains a waiver of defendant's appellate rights and the ability to challenge the conviction or the sentence in any postconviction proceeding.  Specifically, defendant knowingly waives all right pursuant to 28 USC Section 1291 or any other statute or constitutional provision to appeal defendant's conviction on any ground whatsoever.  Defendant knowingly and expressly waived all rights conferred by 18 USC Section 3742 to appeal whatever sentence is imposed for any reason.  Defendant waives the ability to challenge the conviction or sentence that is within the binding range of imprisonment, not less than 15 and not more than 30 years, in any proceeding, under 28 USC Section 2255, and the defendant retains the limited ability to appeal any adverse rulings on

his motions to suppress.

Paragraph 12 reserves the right of the United States to provide the Court and United States Probation Office with information for the presentence investigation and any other pertinent data that will enable the Court to exercise its sentencing discretion.  It further reserves the right of the United States to respond to questions raised by the Court, to correct any inaccuracies or inadequacies in the anticipated presentence investigation report, and respond to any written or oral statements made by the Court, by the defendant, or by his counsel.

Paragraph 13 states that the defendant agrees that all monetary penalties imposed by the Court are due and payable immediately and are subject to immediate enforcement by the United States as provided in Title 18, United States Code, Section 3613.

The defendant agrees to provide all requested financial information to the United States to assist in the collection of any monetary penalties that are imposed, and to a voluntary garnishment of 25 percent of all nonexempt earnings.

Paragraph 14 states that the defendant understands that restitution is a condition of this agreement the defendant will be required to pay to Jane Doe One and Jane Doe Two and has agreed to pay restitution to KD.  The amount of restitution to be determined by the Court will be at least $3,000 payable

to each victim.

Paragraph 15 explains the United States Sentencing Guidelines are advisory and not mandatory.

Paragraph 16 is a forfeiture paragraph.  Defendant understands that forfeiture of property will be part of the sentence imposed, and he stipulates to the existence of the requisite forfeiture nexus between the offense conduct and all items seized, including specifically a blue WD My Passport Ultra, bearing serial number WX11A64AHRR7; a black WD My Passport bearing serial number WX91A92 and 2294; a 16 gigabyte Sandisk Ultra; a black LG Nexus model number LG-E960 cellular phone; a Samsung S21 Ultra cellular phone in blue Otter Box; and a silver Apple MacBook bearing serial number W86450CGW0M, as well as a Hitachi 100-gigabyte Travelstar SATA hard drive bearing serial number MPDZP7Y0H46DGL.

Defendant waives any interest in said property subject to this agreement in any proceedings, and further agrees to consent to entry of forfeiture for said property, waiving the requirements of Rule 32.2, 43(a), or otherwise.

Paragraph 17 explains the defendant's obligations to register as a sexual offender under the Sex Offender Registration and Notification Act, and that failure to do so will subject him to prosecution for failure to register as set forth in Title 18, United States Code, Section 2250.

Paragraph 18 states that the above 17 paragraphs are

the entire agreement.  There are no other agreements, understandings, or promises between the parties other than those contained in this agreement.

And, Your Honor, I have received a copy of the agreement in my email, which I will sign and return to Ms. Ridgeway as soon as I have a chance to scan it.

THE COURT:  And I will indicate that I have -- I know that Ms. Crockett did sign the original and returned it to the Court.  Is that acceptable that the Court treat the signed copy by you, Ms. Crockett?

MS. CROCKETT:  It is, Your Honor, and I did that because I didn't see Mr. Salem's name on my email, and so I thought she just did that for ease, since he was summarizing the plea.

THE COURT:  Okay.  Is that acceptable, Mr. Salem?

MR. SALEM:  That's acceptable to me, Your Honor.

THE COURT:  Okay.  Any objection to Ms. Crockett signing on behalf of the government?

MR. SHEEHAN:  No, Your Honor.

MR. DYER:  No, sir.

THE COURT:  So Ms. Crockett, is what you've just presented to the Court -- I know it's not the sole agreement that was offered to Mr. Seeger, but I don't know the history. Was this the second one or --

MS. CROCKETT:  The history of the number of pleas,

Your Honor?

THE COURT: Yes.

MS. CROCKETT: Yes. Yes. And actually I've just gotten a communication from Mr. Dyer about it. He thought one sentence was removed from the plea, and I'm sorry to deviate just briefly, Your Honor. It looks like the sentence "The chat communication" --

THE COURT: Why don't you tell us, Ms. Crockett, what page and paragraph.

MS. CROCKETT: It's the second page of the stipulation, the very last portion of the stipulation. And it's "The chat communication tied to the images establish defendant's knowledge they were minors and he, in fact, enticed them for more."

Is that the sentence you're talking about, Mr. Dyer?

MR. DYER: That's it, Kim, yes.

MS. CROCKETT: And I think we established, Your Honor, last time we were there, that his knowledge of age is not an element, so he thought that sentence was struck. I don't have a problem with striking it.

THE COURT: Okay. If that's the case, I will go ahead and strike it now on the original.

Any objection, Mr. Dyer?

That's acceptable to you, Ms. Crockett?

MS. CROCKETT: It is, Your Honor. It's not an

element of that offense.

THE COURT:  So what I am marking out as the last sentence that says "The chat communications tied to the images established defendant's knowledge they were minors and he, in fact, enticed them for more," that whole sentence?

MS. CROCKETT:  Yes.  You can strike it.

MR. DYER:  Yes, sir.

Thank you, Kim.

MS. CROCKETT:  And then to answer your question more fully, Judge Aloi, yes, this is the second -- this was the second plea agreement that was reached.  As the Court will recall, Mr. Seeger raised some limited objections before, and we advised the Court we would take a look at the relevant conduct stipulation and see if there were agreements to be made.  We modified that provision and then provided it to defense counsel.

THE COURT:  Is that a fair summary, Mr. Dyer, of the plea agreement?

MR. DYER:  I believe it is, Your Honor, yes.

THE COURT:  Did you present both of these plea agreements to your client and resume -- review them with him?

MR. DYER:  Yes.  Mr. Sheehan and I did that, yes, sir.

THE COURT:  And, in fact, the Court can indicate that I do have a copy of the earlier plea agreement, the April 10,

2025, and we were discussing it, and it was signed by all the parties, so I have a factual basis to know that it was presented and discussed with Mr. Seeger.

MR. DYER:  Yes.

THE COURT:  Mr. Dyer, just for your comfort and the comfort of your client, you can see where I struck this out.

MR. DYER:  Your Honor, could you look -- we have one other -- it's a typo, but Mr. Seeger considers it significant. If you look on page 2 --

THE COURT:  Are you with us, Kim?  And I'm sorry, Ms. Crockett and Mr. Salem, they're looking at page 2.

MR. DYER:  I texted Ms. Crockett this concern.  I apologize to the Court.  I was texting during the proceeding.

But anyway, paragraph 5A, the first sentence, "nothing contained in any statement or any testimony given by defendant pursuant to paragraph" -- we believe should be a four, not a three there.

MS. CROCKETT:  It should.  It should be a four, Your Honor, and we can initial that change.

MR. DYER:  Thank you.

THE COURT:  No objection, I'll go ahead and make that four and --

MR. DYER:  Thank you, Your Honor.

THE COURT:  So Mr. Dyer, I'm going to give you both page 2 and page 4.  You all can go ahead and initial that now

and then --

MR. DYER:  Thank you, sir.

THE COURT:  So Mr. Salem, is what you've presented to the Court with the two changes made, is that the entire agreement between the government and Mr. Seeger in this matter?

MR. SALEM:  It is, Your Honor.  That is the entirety of our understanding and agreement.

THE COURT:  Is that correct, Ms. Crockett?

MS. CROCKETT:  That is correct, Your Honor.  That's the entirety of the agreement.

THE COURT:  I'm going to go ahead, Ms. Crockett, and I'll have Ms. Ridgeway, if you will, come down and get this plea agreement.  I'll let you, Ms. Crockett or Mr. Salem, we'll send it to you, but initial those two changes and then get it back to me and so we can have that for the record.  Nakia will be coming towards the door.

So Mr. Dyer, is the summary given by --

MR. DYER:  Mr. Salem.

THE COURT:  -- Mr. Salem, is that a fair summary of the entire agreement?

MR. DYER:  I believe it was, yes, sir.

THE COURT:  And Mr. Salem, Ms. Crockett, is what you've presented, that is the entire agreement between the government and Mr. Seeger?

MR. SALEM:  It is, Your Honor.

THE COURT:  And Mr. Salem, again, just to make it clear, the agreement is dated April 10, 2025, but if you look under the reference, it will say conditional plea agreement, amended 5-6-25, and that is the agreement we're working from; is that correct?

MR. SALEM:  It is, Your Honor.

THE COURT:  Okay.  Thank you.

So Mr. Seeger, do you understand what this plea agreement does?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand what it requires of you?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you have any questions about the plea agreement at this time?

THE DEFENDANT:  No.

THE COURT:  So Mr. Seeger, I am showing you the original conditional plea agreement, amended 5-6-25, dated April 10, 2025.  Is that your signature, Mr. Seeger, at the bottom of all eight pages of the plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Is it dated 5-12-25?

THE DEFENDANT:  Yes, sir.

THE COURT:  And Mr. Seeger, did you read each page of this plea agreement before you signed the bottom of that page

and before you reached an agreement with the government?

THE DEFENDANT:  Yes, sir.

THE COURT:  And just to make it clear, Mr. Seeger, paragraph 5A on page 2 has been modified -- not modified, corrected, that it should reflect -- 5A, it should reflect paragraph four, not paragraph three; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  And you initialed that; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  And then on page 4, at the top, the full paragraph on that page, the last sentence that says, "The chat communications tied to the images established defendant's knowledge they were minors and he, in fact, enticed them for more," that has been stricken and is not considered something that is part of the factual basis.  Do you understand that, Mr. Seeger?

THE DEFENDANT:  Yes.  Although there's a very similar sentence in the middle of the paragraph that basically says the same thing, so I don't know if that matters.

THE COURT:  Do you see, Ms. Crockett, what he's talking about?  "The images were linked to conversations that defendant was having with two minors who clearly identified themselves as minors."  Are you all with me?

MS. CROCKETT:  I am with you.

THE COURT:  Do you have any position on that?

MS. CROCKETT: If the Court wants to strike a line after --

THE COURT: And by the way, Ms. Crockett, I'm asking. It's not my direction or anything, so but if you're asking.

MS. CROCKETT: I understand, Your Honor.

THE COURT: Strike that on your behalf.

MS. CROCKETT: I understand, Your Honor. If the line could end here, "The images were linked to conversations he was having with two minor females," period, you can strike "who clearly identified themselves as minors."

THE COURT: Okay. Would that be --

MS. CROCKETT: For purposes of the stipulation, it's not necessary.

THE COURT: Okay. I did mark that out.

Would that be agreeable, Mr. Dyer?

MR. DYER: It would, Your Honor, yes.

THE COURT: I'll go ahead and do that.

MR. DYER: Thank you.

THE COURT: And we'll have that signed off.

MS. CROCKETT: And, Your Honor, my apologies. I'll watch for Nakia to send that to me to add my initials.

THE COURT: Yeah. And if you want to go ahead and mark that out and you initial it, then we'll be moving smoothly.

MS. CROCKETT: Okay. But unfortunately, Your Honor,

I have another --

THE COURT:  That's okay.  Mr. Salem can do it. That's fine.

So Mr. Salem, when you get page 4, I've already marked out that last line.  If you'll mark out the one, that will be great.  Okay?

MR. SALEM:  Certainly, Your Honor.

THE COURT:  Thank you so much.

Okay.  So Mr. Seeger, did you review this plea agreement with your attorneys?  So Mr. Seeger, did you review this plea agreement with your attorneys before signing it?

THE DEFENDANT:  Yeah, we've been over it.

THE COURT:  And if you had questions, and I'm sure you had questions, did they answer them in a way that you understood?

THE DEFENDANT:  Yes.

THE COURT:  Now, this plea agreement -- did you feel that you had the time that you needed to consider the plea agreement, Mr. Seeger?

THE DEFENDANT:  Yes.  Yes, I did.

THE COURT:  And I know it's signed today, the day of the plea agreement, or dated 5-12-25, which is today's date, but you all have been talking about this for some time; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Now, this plea agreement, Mr. Seeger, contains nonbinding recommendations and stipulations.  So do you understand that the Court must defer its decision to accept or reject recommendations and stipulations until it considers the presentence investigation report.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, let me make it clear, though, Mr. Seeger, that it is -- in regard to the sentencing, it's a binding plea agreement, meaning that if the Court, and this is Judge Kleeh's decision alone, if he agrees that the sentence -- if it's no less than 15 or no more than 30, if he sentenced you to 30 years, you understand you're bound by this agreement.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And if they sentence you to 15 years, the government's bound by it.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Or anywhere in between.

So if the judge -- judge may look at that and say, Mr. Seeger, that it's not enough, and if he does, then you would have the right to withdraw your plea agreement.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  But if he accepts it, then you're bound

by it.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  So and we've talked about a presentence investigation report, Mr. Seeger, but what happens with that is that probation will do a presentence investigation report.  A probation officer will be appointed to do that.  Your attorneys will make arrangements with the probation office, so they'll talk to you about what information, if any, you want to share with them.  The government has the right under the plea agreement to share with the probation office their -- any information they have that they think is relevant to your sentencing in this matter.

Now, what will happen is that they'll prepare the report, Mr. Seeger.  Your lawyers will get it.  They'll go over it with you.  If you have any disagreement with that report, the presentence investigation report, you have a right to object to it through your attorneys.  If the government has any objection, they may.

But just let me make it clear, Mr. Seeger, in the end, it is the government's decision -- I'm sorry.  It is the Court's decision, Judge Kleeh's decision, his decision alone, as to how you'll be sentenced, and as long as it's 15 to 30 years, you're bound by it.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, other than this binding plea of the

years of the sentence, anything else contained in it, the Court's not bound by that.  Do you understand that?  It's purely recommendations to the Court.

THE DEFENDANT:  Right, right.

THE COURT:  Do you understand under a concept known as relevant conduct, that the Court may take into account any circumstances, conduct, and injuries relevant to the crimes to which you plead guilty?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, there are two paragraphs that deal with that.  I mean, certainly on page 2, paragraph three, both you and the government have agreed to a binding condition that each count shall run concurrent to each other and the sentence shall be capped at 30 years.  And that's -- and the parties understand that if the Court does not accept the binding provision, the defendant will have the right to withdraw his plea of guilty.  So do you see that paragraph, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  And then also certainly is the paragraph ten where you and the government have stipulated and agreed as follows.  You have paragraph ten in front of you; is that correct, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  And it's in bold print.  And you have --

Mr. Salem read it on the record.  I know you have it in front of you, that we have now deleted a portion of one sentence and a complete whole sentence.  What's been deleted in the middle paragraph number two, "the images were linked to conversations that defendant was having with two minor females," period. We've marked out "who clearly identified themselves as minors."

And then when you get to the last sentence, it has marked out "the chat communications tied to the images established by -- established defendant's knowledge that the minors -- that they were minors, in fact, and he enticed them for more."  That sentence is also marked out.

Taking out those two sentences or portion of a sentence, a complete sentence, do you understand you're bound by that stipulation and you agree with it, Mr. Seeger?

THE DEFENDANT:  Yes, I understand.

THE COURT:  So Mr. Seeger, do you understand that, again, this stipulation is what the parties have agreed to, but the Court may have additional facts through its presentence investigation and it will ultimately make its own findings, but this is what you and the government have agreed to.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And if the Court doesn't accept this stipulation, you're still bound by your guilty plea.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, does this written plea agreement, Mr. Seeger, does it represent the complete agreement between you and the government in this matter?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, another way to ask that, is there anything that you and government have agreed to that's not in the plea agreement?

THE DEFENDANT:  No, sir.

THE COURT:  Mr. Seeger, do you want me to recommend the plea agreement be accepted?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, I find that you understand and you agree with the terms contained in the plea agreement, and I order that the original be filed herein and made a part of the record in this case.

Well, just let me ask you this, Mr. Salem.  I have this here.  On page 2, paragraph 5A, we've corrected three to four.  Is there -- is that agreeable to the government?

MR. SALEM:  Yes, Your Honor, that is agreeable to the government.

THE COURT:  And then on page 4, halfway down the big paragraph, we've stopped it at "two minor females" and marked out "who clearly identified themselves as minors."  Is that agreeable to the government?

MR. SALEM:  Just to make sure I'm clear, Your Honor, that sentence will now read, "The images were linked to conversations that defendant was having with two minor females," period.

THE COURT:  Correct.

MR. SALEM:  Yeah.

THE COURT:  And then the last line, "The chat communications tied to the images established defendant's knowledge they were minors and he, in fact, enticed them for more," that's completely omitted; is that correct?

MR. SALEM:  That is our understanding and agreement, Your Honor.

THE COURT:  Okay.  Thank you.

Now, Mr. Seeger, have you received a copy of the plea agreement -- I'm sorry, a copy of the indictment filed against you in this matter?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you read that indictment?

THE DEFENDANT:  Yes.

THE COURT:  Have you reviewed it with your attorneys?

THE DEFENDANT:  Yes, sir.

THE COURT:  So is it necessary to read it on the record again?

THE DEFENDANT:  No, sir.

THE COURT:  Can I take that as a waiver then,

Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  So Mr. Seeger, you're pleading to Count 1, which is coercion and enticement of a minor for sex, and Count 4, which is production of child pornography.

THE DEFENDANT:  Yes, sir.

THE COURT:  So how do you plead, Mr. Seeger, to Count 1, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  And as to Count 4, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Now, Mr. Seeger, before I accept your plea, I want to make sure there's a factual basis for the plea, that you understand the nature of the charge against you and the consequences of your pleading guilty to the charge, that you understand the constitutional and other legal rights that you will give up by pleading guilty, and that you are pleading guilty voluntarily.

So Mr. Seeger, as to Count 1, which is coercion and enticement of a minor for sex, it's in violation of Title 18, US Code, Section 2422(b), and it provides whoever uses the mail or any other facility or means of interstate or foreign commerce or within the special maritime and territorial jurisdiction of the United States, knowingly persuades, induces, entices, or coerces any individual who has not

attained the age of 18 years to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense or attempts to do so, is in violation of this statute.

Now, if the government had to go to trial in this case, they would have to prove the following elements of this offense.

So first of all, do you understand the statute, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  So if the government had to go to trial in this case, they'd have to prove the following elements of Title 18, US Code, Section 2422(b):  First, that you persuaded, induced, enticed, or coerced; second, another person who has not attained the age of 18 years; third, to engage in prostitution or in any sexual activity for which any person could be charged with a criminal offense, that being sexual exploitation of children; fourth, that in doing so, you used the mail or any facility or means of interstate or foreign commerce, or the conduct occurred within the special maritime and territorial jurisdiction of the United States; and fifth, that you did this act knowingly.

Now, again, just to make it clear -- and we've talked about this, Mr. Salem -- it's that the acts took place, not that you knew that the person was under 18; that they actually

were.  So do you understand the elements of the offense, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  Given the statute and the elements of the offense, do you consider yourself to be guilty of coercion and enticement of a minor for sex?

THE DEFENDANT:  Yes, sir.  I have a question.

THE COURT:  You're always welcome -- I always -- you can ask your question.

THE DEFENDANT:  I mean, I've tried to get my attorneys to get me this answer, so there's Count 1 and Count 4.  They're two different charges.  But discovery of the evidence presented for both counts was, in each case, two videos, so why are they different charges?

THE COURT:  Well, let me say -- did you hear this, Mr. Salem?

MR. SALEM:  I did, Your Honor.

THE COURT:  I mean, I assume one factual scenario can be the basis for one or two or three or four crimes.

MR. SALEM:  That is correct, Your Honor.  That's our position.

MR. SHEEHAN:  The alleged victim in Count 1, the alleged victim in Count 2 and Count 4, are different people, and that gives rise to separate charges.

THE DEFENDANT:  But I'm wondering, why aren't both of

them coercion and enticement or both of them production of child pornography?

THE COURT:  Did you get your question answered, Mr. Seeger?

THE DEFENDANT:  It sounds like one of those things, that it's just the government's choice which charge they want to file, so I guess there's -- it's just their choice, and maybe they don't have to disclose that.

THE COURT:  Let me ask you this, Mr. Seeger.  And you're obviously a very bright man, and I appreciate your questions.  Would the answer to it make a difference to your decision to plead today or not?

THE DEFENDANT:  No.

THE COURT:  And that's what I need to know.  I mean, I understand that.

So now we're going to talk about Count 4, which charges you with production of child pornography.  And it reads -- it's in violation of Title 18, United States Code Section 2251(a) -- any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in the territory or possession of the United States with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such

conduct, or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under the penalty provisions, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mail, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including computer, or such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, if mailed.

So do you understand the statute under which you've been charged for Count 4, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, if the government had to go to trial in regard to Count 4, they'd have to prove the following elements to a jury's satisfaction, each one beyond a reasonable doubt:  One, that you knowingly employed, used, persuaded, induced, enticed, or coerced any minor to engage in or who has a minor assist any other person to engage in any sexually explicit conduct; that the defendant had the intent that such minor engage in any sexually explicit conduct; that defendant did so for the purpose of producing any visual depiction of

such conduct, or for the purpose of transmitting a live visual depiction of such conduct; and fourth, that the defendant knew or had reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce.

So do you understand the elements of the offense of Count 4, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  Considering the statute and the elements of the offense, do you consider yourself to be guilty of production of child pornography?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, Mr. Seeger, the government is required to provide a factual basis for your plea in this matter.

Mr. Salem, I'm assuming that you'll do that by proffer?

MR. SALEM:  I am, Your Honor.  In fact, in this matter, because of the nature of the agreement, we would be relying on the relevant conduct stipulation that was stated within the written plea agreement and placed on the record as the factual basis.

THE COURT:  Okay.  So -- well, let me ask you, Mr. Dyer, do you have any objection to the factual proffer as

set forth in paragraph ten of the plea agreement with the corrections or -- corrections made by the parties?

MR. DYER:  I do not, Your Honor.

THE COURT:  Do you, Mr. Sheehan?

MR. SHEEHAN:  No, Your Honor.

THE COURT:  Okay.  Do you, Mr. Seeger?

THE DEFENDANT:  No.

THE COURT:  And Mr. Seeger, does the factual proffer in paragraph ten or the factual stipulations the parties have agreed to, is it substantially correct?

THE DEFENDANT:  I mean, I would say so.

THE COURT:  Okay.  Does it accurately reflect your involvement in what occurred?

THE DEFENDANT:  Yeah, I would say so.

THE COURT:  Okay.  So Mr. Seeger, does paragraph ten then, does it represent what you agreed to as a fair factual statement concerning these two offenses, 1 and 4?

THE DEFENDANT:  Yeah.  All except the last sentence.

THE COURT:  Is that the one we took out?

THE DEFENDANT:  No.  About all conduct was committed within the Northern District of West Virginia and elsewhere.

THE COURT:  So let me just say this -- and your lawyers can speak about it.

MR. SHEEHAN:  Your Honor, if I may, Your Honor.  Ultimately, Judge, the minors involved in this particular case

are out of state.  Ultimately, the state's -- the government's key evidence in this case was located on a computer that was at Mr. Seeger's residence in Preston County, West Virginia.  So there is an interstate commerce element, and because the end of that is that those documents -- that those pictures are on digital within the state of West Virginia, we believe that that certainly satisfies the technicality of that particular requirement.

THE COURT:  So is that, of course -- they mention Marion County in the indictment.

MR. SHEEHAN:  There was some dispute in the state court case over whether documents -- in state court, Mr. Seeger was originally charged in Preston County, but was a dispute about venue between Preston and Marion Counties, but ultimately the seizure of materials in this particular case occurred by the state trooper in Preston County.  And then there was a question about where they may originally have been received by my client, but certainly both of those counties are in the Northern District of West Virginia.

THE COURT:  So Mr. Seeger, I know you heard just what Mr. Sheehan said.

THE DEFENDANT:  Yeah.

THE COURT:  So Mr. Seeger -- and again, just assuming that what your lawyer said is correct, and I'm accepting that it is factually correct, that that's where these items were

seized, the Northern District of West Virginia includes Preston County, Marion County, the top half of the state. So given that, and assuming the correctness of your lawyer's representations, did this happen within the Northern District of West Virginia?

THE DEFENDANT: Yeah, but I would -- I mean, I have to be honest. I'm going to point out -- I would like to put on the record, first of all, that not only was video an issue in the state case, but we did file a motion to dismiss for lack of evidence, because there was no evidence produced at discovery, and the prosecutor refused to show up for the hearing to defend the evidence.

THE COURT: That was in the state case?

THE DEFENDANT: That was in the state case, yes, that my family spent over 60 grand on between attorney fees and bail. And I would also like to say that Count 4 of the indictment, the evidence clearly shows and can be proven beyond a reasonable doubt that I was not in the Northern District of West Virginia on those dates for Counts 3 and 4, and I just wanted to be sure that you have the authority to take the plea to Count 4, knowing that that's true. And I have made a discovery request that was never passed on to the government that would further prove that.

MR. SHEEHAN: Your Honor, venue is -- under existing Fourth Circuit case law, has to be proved by a preponderance of

the evidence, not beyond a reasonable doubt.  We have taken that factor into account as well in this particular matter.

THE COURT:  As to Count 4.  So he's not raising this as to Count 1; is that correct?

MR. DYER:  That's correct, Your Honor.

THE COURT:  So as to Count 4 -- let me ask the lawyers who have looked at the discovery.  Do you have -- I mean, are the dates alleged, I mean, correct, based upon the discovery that you've seen?

MR. DYER:  Your Honor, there is some evidence that Mr. Seeger was working in South Carolina, I believe specifically Myrtle Beach, during the time frames that are covered in Counts 3 and 4 of the indictment, and frankly, there is -- other evidence to the contrary with respect to the other counts in the indictment.  There's a lot of different things going on in Mr. Seeger's life at that time.  Factoring in the reduced burden of proof on the government and a number of other factors that Mr. Sheehan and I have considered, not the least of which would be prevailing on the issue of venue would potentially, which we're not -- certainly not certain we could prevail, but even if we did, that wouldn't lead to anything but a further indictment charging many additional counts and would probably result in a bigger problem for the defendant than he faces under this indictment.

So all of those things considered, we have concluded

that the venue issue was not worth pursuing into the courtroom as a defense, but again, as I pointed out at the last hearing, this is complicated on a lot of levels, and Mr. Seeger is a high-level thinker, and so we -- he doesn't view this necessarily as two 40-year veterans of the legal profession have.  And but in the end, he'd come to the conclusion that certainly it's in his best interest to enter these pleas.  We just kind of get stuck moving through some of these little issues during the Rule 11 process, so forgive us for that --

THE COURT:  But let me say, Mr. Dyer and Mr. Sheehan, and to you, Mr. Seeger, I don't -- I mean, it is -- I mean, to the extent that he raises that it's a -- perhaps if he says he's in another state, it could be a jurisdictional issue, but from what I understand that you all have had -- two lawyers have had those discussions with Mr. Seeger.

MR. DYER:  Right.

THE COURT:  Have you come to the conclusion that jurisdiction is properly before this Court?

MR. DYER:  That venue is.

THE COURT:  Venue is as well.

MR. DYER:  Again, we have some belief -- I'm speaking Mr. Seeger has some belief -- we don't have proof of that, but yes, the answer to your question is yes, it's been thoroughly considered, yes, sir.

THE COURT:  And let me say this.  Mr. Seeger, it's

not an uncommon thing that a defendant in a criminal case may view something very different, and venue and jurisdiction is both legal and factual, but certainly, I mean, I have to -- we ask that question for a reason, and certainly it sounds like the lawyers and Mr. Seeger have talked about that issue far more than I've seen in about any other case.

THE DEFENDANT:  I know that the standard for venue is preponderance of the evidence.  I chose my words carefully when I said beyond a reasonable doubt, because there is a photo on the camera roll of the cell phone, the nexus for, that will prove where I was.

THE COURT:  Okay.  So --

THE DEFENDANT:  That's a discovery request that I made that was never --

THE COURT:  Let's just slow down now.  You know, Mr. Seeger, I have to make decisions.  You do.  But you don't have to do any of this.  You got a trial scheduled tomorrow morning.  Your lawyers can raise that issue again.  The judge can make his rulings.  You can raise these things.  The judge will make the rulings.  I don't know whether it will change anything.

What I need to know, Mr. Seeger, at the end, certainly are you entering into this guilty plea with your eyes open, knowing what's happened, and that you acknowledge and recognize the authority of this Court to accept your plea.  If

you don't, then we'll stop.  I can't do anything without -- I mean, and I don't -- I hope you heard my tone.  I'm not saying that in a coercive way.  I -- everything is based upon that.  I know your lawyers believe I have it.  But there's a factual issue on that, and then we can stop, or if you -- if it's just something -- everyone makes decisions that they have to make, but that's up to you, Mr. Seeger.

(Pause in proceedings.)

MR. DYER:  I think we're ready, Your Honor.

THE COURT:  So again, Mr. Seeger, venue and jurisdiction at times can be complex legal issues driven by factual issues, but I -- it's almost a nonstarter.  If you believe that we don't have authority to accept your plea in this matter -- are you agreeable for me to accept your plea in this matter?

THE DEFENDANT:  I'm agreeable for you to accept my plea.

THE COURT:  Okay.  Can I take from that that you would then accept that I have jurisdiction to do so, and venue?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Counsel, in regard to the time periods, are they as set forth in the indictment?  Based upon the discovery that you've seen, are they within the time frames, Count 1 and 4?

MR. DYER:  Your Honor, I'm sorry.  Would you mind

repeating that last question?

THE COURT: Sure. We talked about at least in order for me to have jurisdiction or venue, it needs to be the Northern District of West Virginia, and lately Mr. Seeger indicated that he agreed that I have venue and jurisdiction to hear your plea.

THE DEFENDANT: Yeah. Yeah. I thought I said that already.

THE COURT: As far as the time periods that they allege, Mr. Seeger, what do you have to say about those?

THE DEFENDANT: I mean, I was definitely not in West Virginia, but I do know -- I don't disagree that you have authority to take the plea. I just didn't know -- that was why I raised that question.

THE COURT: Well, that includes, though, the only authority I would have is in the Northern District of West Virginia, and that includes Marion and Preston.

Well, let's -- Mr. Dyer, are you satisfied if this case went to trial, there would be no meritorious legal defense to the charge?

MR. DYER: I am, Your Honor.

THE COURT: Both charges.

What about you, Mr. Sheehan?

MR. SHEEHAN: I concur, Your Honor.

THE COURT: And that's in regard to Count 1 and Count

4; is that correct?

MR. SHEEHAN: Yes, sir.

THE COURT: Are you satisfied Mr. Seeger's constitutional rights and other rights have been observed fully?

MR. DYER: I am.

MR. SHEEHAN: Yes.

THE DEFENDANT: Well, not my Fourth Amendment rights.

MR. SHEEHAN: Your Honor, we filed a motion with Judge Kleeh. He has ruled against Mr. Seeger. And other than that, and --

THE DEFENDANT: I did say my Fourth Amendment rights were violated and the search was unconstitutional and unlawful, which I appreciate.

THE COURT: No, no. But let me -- I know that, but I know that -- and, in fact, you reserved the right to appeal that issue; is that correct?

THE DEFENDANT: Yes.

THE COURT: But when you say your Fourth Amendment right, you're referring to the motion to suppress made by your attorneys; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that the Court did not agree with your position and denied your motion to suppress. Do you understand that, sir, Mr. Seeger?

THE DEFENDANT: Yes, sir.

THE COURT: You also understand you have a right to -- you preserved the right to appeal that to the Fourth Circuit; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Now, that will be their decision. Okay. Was there anything other than that in regard to your Fourth Amendment rights, Mr. Seeger?

THE DEFENDANT: No, sir. I would have liked to exercise my Sixth Amendment right, though, and go to trial in the state case. I would like to say I just find it abhorrent that I can prove that --

(Pause in proceedings.)

MR. DYER: We're back on track, Your Honor.

THE COURT: Okay. So Mr. Seeger, let me say this, just so that the record can be clear. I understand that this may have initiated, there was a state case, and I'm not sure what happened with it, but all I can address is the issues before me as the US Magistrate Judge, the charges brought against you by the US Attorney for the Northern District of West Virginia, and that's all we can deal with, and so your decision needs to be made -- and undo any of that. Decision needs to be made whether you're going to enter a guilty plea in the federal case that's before us now. I understand you have those thoughts, but you understand that that's the business

before the Court today?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Okay.  Now, if you feel so strongly about that and what happened there that you want to go to trial in this case, you can.

THE DEFENDANT:  Apparently, I wouldn't be allowed to defend myself, Your Honor.

THE COURT:  Well, you have two good attorneys who would defend you.

THE DEFENDANT:  I can prove I didn't know how old Jane Doe Two was despite --

MR. SHEEHAN:  Which is not a relevant consideration.

THE DEFENDANT:  That's why I can't defend myself, but I could defend myself in a state case.  And by the way, the statute of limitations for her stealing over $10,000 from me under false pretenses will start to run out in about two or three weeks, if anyone's interested in justice for someone who actually lived in the Northern District of West Virginia.  Just wanted to throw that out there.

THE COURT:  So let me unpack that a bit.

I mean, these are your lawyers.  You have a trial scheduled for tomorrow.  I mean, we've talked about this before.

THE DEFENDANT:  My understanding is the trial date has already been rescheduled.  It won't be tomorrow.  Or it

will be rescheduled.  Excuse me.

THE COURT:  Well, I mean, it's scheduled for tomorrow.  Certainly if there's a plea, but I mean, what is that all about?  I understood that the Court entered an order. That's all I know.

MR. DYER:  Your Honor, it's still scheduled for tomorrow.

THE COURT:  Okay.

MR. DYER:  There's practical concerns, but it is still -- by court order, it is scheduled for tomorrow.

THE COURT:  Okay.  That's the order I saw.

Okay.  Let's go on.  Do you -- Mr. Dyer, do you concur in Mr. Seeger's now-stated intention to enter a guilty plea?

MR. DYER:  110 percent.

THE COURT:  Do you, Mr. Sheehan?

MR. SHEEHAN:  I believe so, Your Honor.

THE COURT:  Is it your intention to plead guilty to these two offenses?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Mr. Seeger, I do find that there's a sufficient factual basis for your plea of guilty based upon the factual stipulation entered into by the parties in writing in the plea agreement, as well as has been verified by everyone here in the courtroom today.

THE DEFENDANT:  I'm sorry, Judge.  I thought you were pausing.

THE COURT:  I did take a pause to catch my breath, but go ahead.

THE DEFENDANT:  I would like to put one other thing on the record before we conclude, because I -- just in case there might be --

THE COURT:  We have not concluded yet, but go ahead.

THE DEFENDANT:  Yes.  I have a concern.  I've done a lot of research on these types of cases, and I found two that struck me as quite interesting.  I just wanted to bring up one via the Subway guy that everyone remembers.  He traveled, had sex with two minors, had a bunch of child pornography with victims as young as six years old.  He was offered a plea deal for 15 and a half years in prison.

I didn't touch anyone.  I didn't travel, nor did I discuss traveling, and yet I'm being offered a plea deal for 15 years in prison.  I think there might be an issue here with regards to how people were treated back in 2015, which is when this alleged conduct was supposedly occurred, and how people are being treated today.  And I may want to consider raising that issue someday on a Fourteenth Amendment grounds for due process, but I don't know that that will work, but I just wanted to put that on the record.

And there's other cases similar to that.  I mean, I'm

getting the same deal as people who actually violated children in person.  And I don't think that's right.

THE COURT:  Well, let's go back to that.  First of all, Mr. Seeger, the sentence that will be imposed upon you will be imposed by Judge Kleeh.

THE DEFENDANT:  Right.  And it can be even higher.

THE COURT:  Well, but let me say this.  You have agreed to a binding plea that basically has a bottom of 15 years, because it's a mandatory minimum, but no greater than 30 years.  When we say binding, I'm going to write a report to the Court that you've agreed to that.

Now, if you don't agree to that -- this is not academic.  This is serious as can be.  You're representing to the Court when you get to that, you start having this talk and they'll say, let's just go back to square one, because this is probably the most serious thing you've agreed to in the agreement.  Now --

THE DEFENDANT:  I'm agreeing to this for the sake of expedient appeal, because I think this is a serious issue for the country.  I do not agree at all with the terms of imprisonment, but that's where I am.  I'm not allowed to defend myself.  Nobody cares about the truth.  So I just want to get to the Fourth Circuit, where hopefully there will be some principles for the Constitution.  That's where I'm going.  So let's get there.

MR. DYER:  He's speaking of the Fourth Amendment issue, Your Honor, motion to suppress.  That's what he's speaking of.

THE COURT:  That doesn't sound like that.  He's talking about another issue as to what's -- what is a -- how they -- what his sentence should be in this matter, and it may be so extreme that it's unconstitutional.

THE DEFENDANT:  Just wanted it on the record, in case I want -- if I'm not successful on appeal of the motion to suppress, I just wanted to make sure that I had something on the record so that I have an avenue for appealing down the road on constitutional grounds.  That's why I wanted it on the record.

THE COURT:  Okay.  Well --

THE DEFENDANT:  I don't know that anyone has challenged a plea agreement that -- for a crime from long ago and the standards people were given then for a future date.

THE COURT:  I appreciate what you're saying, but here's why I can't accept that, Mr. Seeger.  First of all, I'm not going to sit here and have you look at me and say I agree to 15 to 30 years, 'cause this is a binding agreement.  You're telling me that, and then on the other side of your mouth you're saying, I'm taking it up because I think it's unconstitutional.  If you're telling me that, then you have not agreed to that, and that's critical to this.

THE DEFENDANT:  So the alternative thought -- I understand what you're saying, by the way.  But what I will say is that because I'm not allowed to defend myself at trial, I don't expect to win at trial.  Therefore, it's in my best interest to take the plea agreement, whether it's fair or not.  It doesn't mean I have to agree with it.  I agree by the terms. I agree to abide by the terms, of course, but it doesn't mean that I think it's fair or just.

THE COURT:  What if the Fourth Circuit says, didn't you agree to 15 to 30, and that's the end of that discussion? Do you understand that?

THE DEFENDANT:  Yeah, they may very well do that. The issue is that there's -- as far as I can tell, there might be some new ground to be broken on the question of the standards under certain sentencing agreements from a decade ago to now.  And I just wanted it on the record.

THE COURT:  Well --

THE DEFENDANT:  That's all, really.

THE COURT:  I know you're saying that's all, Mr. Seeger, but -- and it may make some sense in your mind, but it's just --

MR. DYER:  Your Honor, if it brings any consolation to the Court, the idea in Mr. Seeger's mind arose months ago that he may be the victim or target of a selective prosecution.

THE COURT:  Sure.

MR. DYER:  And we had addressed that with him on a number of different occasions, and Steven has always felt that as a matter of fairness to him, he should be able to voice his concern, though he accepted Mr. Sheehan and I's advice and counsel that he did not have a legitimate selective prosecution case or defense in this matter, and Mr. Seeger ultimately and wisely, sagely, agreed with that advice from Mr. Sheehan and I. And for some reason he just wanted it to be known that that had been given consideration by him.  He accepts that he does not have that claim available to him in this case.  I hope that helps.

MR. SHEEHAN:  I concur wholly with Mr. Dyer's thoughts.

THE COURT:  Let me say this, Mr. Seeger.  I just want you to understand my thinking on this.  I can accept your feeling that you've been treated differently or unfairly compared to how other people have.  That's not an uncommon feeling in front of me, why did I get this sentence and someone else didn't.  And then you talk about the Subway guy and how that feels unfair to you.

THE DEFENDANT:  Or why I can't find a case with this fact pattern that's more than three years old and mine's over ten years old.

THE COURT:  Oh, no, no.  I understand that.  But here's what it does, though, Mr. Seeger.  Here's my focus,

Mr. Dyer and Mr. Sheehan.  And I think it is more than academic.  Do you understand when you agree to a binding plea to 15 to 30, you've given up all those arguments?  You've given them up because you have agreed to it.  And if you don't accept it as such, then I don't -- and I'm trying to be careful how I say that, because I don't want to mislead you, Mr. Seeger, but that's what I'm focusing on is, this is a binding plea that you've agreed to, and if you don't agree to that, then you don't, and --

THE DEFENDANT:  I do agree.  I agree to the binding terms of the plea.  It doesn't mean that I agree that it's fair.  That's the point I was trying to make.  I wanted to put that on the record.  I have been told that Randolph Bernard himself said the plea agreement is unfair but he's not willing to do anything, so maybe that's not true.  That's what I was told.  So here I am.  The State of West Virginia charged me with over --

MR. SHEEHAN:  Stop talking about the state case.

THE COURT:  You know, let me say this to you, Mr. Seeger.  I don't have any question that your attorneys have worked hard in this because they truly, truly do believe it's in your best interest and they -- they're not saying that to be casual about it.  I mean, they believe that.  And as seasoned attorneys, they understand the risk that you expose yourself to, but you're a bright and intelligent man and you -- and

maybe that's part of the struggle.  But the more time I spend with you, Mr. Seeger, how it feels to me is, I don't know if I agree with anything, but it's what I have to do.  And I understand that, but, boy, you push the edges of it and --

MR. DYER:  I think he would acknowledge it's in his best interest to do this as well, which I think is important, even though he believes there would be fairer deals that could have and should have, in his mind, been offered to him.  Well, they weren't.  But this is clearly in his best interest to see this deal through, and he had every intention when he showed up here to enter these guilty pleas pursuant to this agreement, which he knew and understood to be binding.  I think he'll be glad to confirm what I just said as true on the record, Your Honor.

Steven, is what I just said true?

THE DEFENDANT:  I absolutely agree that what he said is true.  It's in my best interest to take this plea deal.  I just think it's in the best interest of public awareness that I have done something else, but that's not in my best interest.

THE COURT:  Well, okay.

THE DEFENDANT:  So that's why I'm struggling with this.  I think that people need to know what happened here.  In fact, I'm dong my best to get the judge's ruling on the suppression issue to the news media so that people can find out what's going on.

THE COURT:  Well, let me say this.  I do -- the way you framed it, Mr. Seeger, is an important distinction to me, because there are times when you may feel that in the public's interest this should all see the light of day or whatever, get to trial, do what you do, but that -- in your own personal interest, that it may be the best thing is for you to plead to this and get it behind you.  Not only that; if you go to trial and do that, you understand through your attorneys that you may expose yourself to more time.  And I've heard you say before in other pleadings that you really don't want to put at least one particular alleged victim through all this.

THE DEFENDANT:  That's true.  So I struggled with that a lot, but I did find out recently that we could just stipulate to the factual description of the images and not have to show them, and therefore if the government chose to present those images, it would be on them and not me.  But that's why I was considering going to trial, but I really do think that this Fourth Amendment issue is so important for the country that I just want to get to the Fourth Circuit as fast as I can, so I would like to do that.

THE COURT:  And again, that's the --

THE DEFENDANT:  I do not want to make either girl, even the one who hurt me, have to sit there and have other people view these.  It's not right and it's not fair.

THE COURT:  You do want to enter a guilty plea.  You

want to appear before the judge --

THE DEFENDANT: Yes.

THE COURT: -- understanding what you've agreed to, 15 to 30 years.

THE DEFENDANT: Uh-huh.

THE COURT: And that he could sentence you to 30 years and you can then not change your mind; is that correct?

THE DEFENDANT: Right. Right.

THE COURT: Okay. Well -- okay. I do want to talk to you about the penalties, Mr. Seeger. And Mr. Seeger, I'm going to find there is a sufficient factual basis for your plea of guilty. I don't have to believe things beyond a reasonable doubt. That's not my job. But I think there's a sufficient factual basis, simply based upon the plea agreement that you've agreed to, that you've signed, that you've verified on the record here.

You understand, Mr. Seeger, you're pleading guilty to a felony offense, and if your plea is accepted, you will be adjudged guilty of that felony offense?

THE DEFENDANT: Yes, sir. Correct me if I'm wrong, Judge, is it Judge Kleeh that ultimately accepts the plea of guilt? You don't do that.

THE COURT: What I will do is -- and you're correct on that. What I will do is enter a written report and recommendation that he accept the plea. Now, that -- there's a

14-day time period to file objections to it, because I don't have the authority, so it will be received by your attorneys. I do an R and R, which I will find there's a sufficient factual basis that you are doing this knowingly and voluntarily and there's a factual basis for it.  So, I mean, do you understand that's what I do, Mr. Seeger?

THE DEFENDANT:  Yes, sir.  I just wanted to clarify and make sure I had the right idea.

THE COURT:  That's fine.

THE DEFENDANT:  Thank you.

THE COURT:  So do you understand that such judgment, Mr. Seeger, may deprive you of valuable civil rights, such as your right to vote, your right to hold public office, your right to serve on a jury, your right to possess a firearm or gun, and that's for the rest of your life.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand you expose yourself, as to Count 1, to a maximum penalty of a term of life imprisonment, a fine of $250,000, and a lifetime term of supervised release.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And as to Count 1, you also expose yourself to a mandatory minimum sentence of ten years and a term of at least five years of imprisonment.  Do you understand

that?  I'm sorry.  Five years of supervised release.

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  As to Count 4, the production of child pornography, the maximum penalty is a term of 30 years of imprisonment, a fine of 250, and a lifetime term of supervised release, but you also expose yourself to a mandatory minimum penalty of a term of 15 years of imprisonment and at least five years of supervised release.  So do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And the reason it's important for you to understand that, the Court, while you've agreed to a binding, it's not binding on the Court, and you need to be aware of what your maximums are and mandatory minimums.

Do you understand as to supervised release, what that means is that after imprisonment, you'll be supervised by the probation office under conditions that will be set by this Court.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand that if you violate any of those terms of supervision -- and they could be for life, if the Court imposed it -- then the Court could revoke the term of your supervised release and order you to serve additional time in prison.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand you'll be required to pay a special assessment of $100, for a total of 200, for having been convicted of a felony offense?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand that you've agreed that you'll do that within 40 days of entry of your guilty plea?

THE DEFENDANT:  Yes, sir.  If I'm able to, I will.

THE COURT:  Okay.  No.  That's a fair thing.  It's commonly provided in plea agreements, but I think there's also understanding with people incarcerated that --

Well, just let me ask you, Mr. Salem, I've never seen anyone want to set aside a plea agreement because of someone's failure to -- inability to pay the special assessment.  Has that been your experience?

THE DEFENDANT:  Can I pay with suits?

THE COURT:  Go ahead, Mr. Salem.

MR. SALEM:  I've never observed that, Your Honor, no.

THE COURT:  And would you have any intention to do so?

MR. SALEM:  We would not.

THE COURT:  Okay.  You understand unless you're determined to be indigent and financially unable to do so, Mr. Seeger, you'd be required to pay an additional $5,000 special assessment under the Justice for Victims of Trafficking

Act, Title 18, US Code, Section 3014(a)(3), and up to 50,000 for the Amy, Vicky and Andy Child Pornography Assistance Act. And I do know that in the plea agreement, Mr. Seeger, that there is a provision that provides that, if it is found to be applicable. So do you understand that?

THE DEFENDANT: Yes, Judge. Because I pointed out that the Amy, Vicky and Andy law was passed in 2018. I also just found out a few days ago, doing some research, that the Justice for Victims of Trafficking Act appears to have been passed in 2015, which is also past the period of the indictment, so I may also not be subject to that. Just wanted to bring it up, but I guess we can bring that up at the sentencing hearing.

THE COURT: I understand that your position is, and I think it's a fair one, if the penalty was not in effect at the time this occurred, as a matter of law, it wouldn't apply to you; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: And is that the plea agreement. Now, the other one, it's not.

But Mr. Salem, would the government acknowledge certainly that if these offenses occurred before a statute enacted in regard to penalties that he at least would preserve his right to raise that issue?

MR. SALEM: I think he preserves his right. Without

having researched it, though, I'm not sure whether or not they'd be subject to the ex post facto clause.  It's just being raised now, but certainly I think he does preserve the right to raise the issue.

THE COURT:  Okay.  And that's -- I'm sorry.  Did you have something else, Mr. Seeger?

THE DEFENDANT:  It's fine.

THE COURT:  So certainly you can raise that.  Judge Kleeh will make that decision, and if you disagree with it, then that's a sentencing -- I think it's a sentencing issue.

Do you understand that as part of your fine, you could be required to pay the costs of incarceration and/or the costs of supervision on release, Mr. Seeger, if you're financially able to do so?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that it now costs $4,309 per month for prison, $395 per month for supervised release, $3,453 per month for a residential reentry center.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  As to paragraph -- do you understand that the Court does have the authority to order restitution, if appropriate, in this matter?

THE DEFENDANT:  Yes, sir.

THE COURT:  And in fact, paragraph 14 of your plea

agreement talks about restitution as statutorily required.  Did you see that in paragraph 14, Mr. Seeger?

THE DEFENDANT:  Yes, sir.  I just got to the paragraph.

THE COURT:  And that provides that in an amount to be determined by the Court at sentencing or at a separate sentencing issue on the issue within 90 days of sentencing. Procedurally, typically what will happen is the government may not pursue it.  If they do, the Court may set a hearing within 90 days so the parties can determine if there are any victims under the law and to what amount they should get and then there can be a hearing on that.  So do you understand that process?

THE DEFENDANT:  I understand.  I still -- I raised this last time.  I still don't know who KD is, and it hasn't been presented to me.  I have no idea who she is.  And I don't know if that's relevant.

THE COURT:  I'm sorry.  What is --

MR. DYER:  Your Honor, there were three victims that were produced at a discovery meeting.

THE COURT:  Okay.

MR. DYER:  Months ago.  One was a young lady that Steven had no recollection of, but there was more than ample proof of his involvement over the Internet with this young lady.  And his only concern now is that he doesn't remember who she was, but it's of no consequence or relevance whatsoever to

the outcome of any aspect of this agreement or this case, period.  And he understands that as well.

THE COURT:  Is that correct, Mr. Seeger?

THE DEFENDANT:  Definitely that wasn't part of any indictment, so it wouldn't have affected the outcome of the case.  I just -- you know.  I dispute the ample proof statement.  But it doesn't matter.

THE COURT:  Do you understand that you have agreed in the plea agreement to pay restitution to any such victim regardless of whether you plead guilty to the count with which the victim is associated?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Do you understand all monetary penalties imposed by the Court will be due and payable immediately, and you agree to provide financial information to the US Probation Office to assist in doing so?

THE DEFENDANT:  Yes.  But I -- again, being incarcerated, I won't be able to provide a lot of assistance.

THE COURT:  Oh, no.  I understand.  They'll talk to you and -- but the point is, you're required to cooperate with probation to provide them certain information.

THE DEFENDANT:  Right, right.

THE COURT:  Do you understand -- let's take a look at paragraph 16 of your plea agreement.  We're typically talking about forfeiture now.  Forfeiture is a penalty in your case,

Mr. Seeger, and are you looking at paragraph 16 now?

THE DEFENDANT:  Yes, sir.

THE COURT:  In that you will see that there are a list of one, two, three, four, five, six items -- seven:  A blue WD MyPassport Ultra; black WD My Passport; 16-gigabyte Sandisk; black LG Nexus; Samsung S21; silver Apple MacBook; Hitachi 100GB Travelstar.  Just understand those items have been taken from you by law enforcement and they're not going to be returned to you.  Do you understand that?

THE DEFENDANT:  Yes, sir.  I wanted to raise one question.  I have talked to my attorney about this, so although these items listed here, there were only issues with two of them, so I don't see any reason why I couldn't get the rest of them back.  One of these hard drives has some photos we took of Jupiter with a high-altitude balloon mission with NASA, and they're very important to me.

THE COURT:  Well, I mean, have you all had those discussions with --

THE DEFENDANT:  I don't think it's been discussed yet with the government, but I would just like to raise that issue at some point.

THE COURT:  Well, let me ask you, Mr. Salem, I know you're new to the case, but I mean, to the extent that there may be something on these items, as he just said, that are not pornographic in the least bit, but they seized everything, and

if that is factually correct, would the government consider returning those to him?

MR. SALEM:  We'd consider it, Your Honor.  We'd engage in further discussions with counsel for the defense.

THE COURT:  Okay.

THE DEFENDANT:  Thank you, Mr. Salem.

THE COURT:  So now, do you understand -- and I think this is the case.  Is this the case where he would be required to register as a sex offender?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  And now, let me say as to that regard, Mr. Seeger, that can be for a lifetime.  And each state has their own registration requirements.  And the point is you go from one state to another, you have to let the one know you're leaving, the one you get to, what their requirements are.  And it can be employment, where you live, your car, all -- your phone, all those things, but you understand that you violate any of that, that's its own separate criminal offense, your failure to register.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand you must update those things within three business days, if you have any change of your name, residence, employment, or status?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand it's a federal felony

if you fail to register?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, I know you're a citizen, but do you understand that if you're not a citizen of the United States, by pleading guilty to a felony charge, you may be subject to deportation at the conclusion of any sentence, that you may be denied future entry into the United States, and that you may be denied citizenship if you ever applied for it.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Gentlemen, I'm going to go over the sentencing guidelines.

You understand the US Sentencing Guidelines do play an important role in determining a sentence in your case, Mr. Seeger?

THE DEFENDANT:  Yes, sir.  I do know everything I need to know about the sentencing guidelines, honestly.

THE COURT:  Have you discussed that with your attorneys?

THE DEFENDANT:  Yeah.  In some detail.  I do know that there is one enhancement that might be applied to my case that I believe was enacted into law after the alleged conduct, so --

THE COURT:  Well --

THE DEFENDANT:  -- might have to bring that up later

at sentencing.  We have time before we're there.

THE COURT:  So what will happen is -- I'm just showing you the sentencing table.  I'm sure you've looked at that.  There's an offense level, criminal history category.  So what will happen is that probation is required in their presentence investigation report, they'll make a specific recommendation, Mr. Seeger, to the judge as to what your sentence should be, what they recommend it will be.  In that sentence [sic] you'll see what they believe your offense level is, are there any enhancements.  If there's anything in that recommend -- their recommendation to the Court that they believe's applicable but you disagree with through your attorneys, you have a right to object to it.

Ultimately, though, Mr. Seeger, is that the Court's going to look at that to get its own idea whether they think the agreement that the parties have reached on 15 to 30 years, is it reasonable under the guidelines.  But that's why the Court will look at the guidelines.

So do you understand that this will happen?  Probation will prepare a presentence investigation.  You're going to get it, and you'll go over it with your attorneys.  And if you do disagree with it, you have a right to file objections with the Court.  Do you understand that?

THE DEFENDANT:  Yes, sir.  That's what I was just talking about, that enhancement, I think that's the process.

THE COURT:  But do you also understand, though, that -- I mean, if the Court accepts your agreement to the binding plea and sentences you at 30 years, you're bound by that, just as the government's bound if it's 15.  Do you understand that?

THE DEFENDANT:  Yes, sir.  The United States has seven times the rate of incarcerated people than big, evil Russia, so I understand that we love locking people up.

THE COURT:  Do you understand the sentence -- well, you have a binding plea.  We've talked about that.

Now, do you understand the Court must calculate the guidelines and consider that range before they determine what your sentence is.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Can be increased if you had a prior firearm offense, violent felony conviction, or prior drug conviction.  Do you understand that?

THE DEFENDANT:  I have no criminal history at the date of these alleged offenses, sir.

THE COURT:  And --

THE DEFENDANT:  Should work for me, I guess.

THE COURT:  Sure.  Do you understand that the Court is not bound by the guideline range.  It has the authority to impose a sentence that is more severe or less severe than the sentence called for by the guidelines?  Now, again --

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.

THE DEFENDANT:  I believe the Supreme Court made those more suggestions than mandatory.

THE COURT:  That's correct.

THE DEFENDANT:  Not too long ago.

THE COURT:  You understand there is no parole in the federal system, so what will happen is if -- when the judge sentences you, if he accepts 15 years or the 30 years, you'll have to spend every one of those years, and you don't get out halfway through on parole.  The only way you can serve less time is if you get good-time credit.  That's controlled by the warden and staff where you're incarcerated, but the Court has no say in that.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Now, this is important.  Do you understand that if the Court accepts the binding plea and sentences you within the 15 to 30 years, you are bound by your guilty plea and you will then have no right to withdraw it.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand you will have a right to testify at your sentencing hearing if you so desire?

THE DEFENDANT:  Yes, sir.

THE COURT:  Gentlemen, I had a scheduled call at 4:00

that has to do with my disclosure.  It shouldn't take more than five or 15 minutes, but I got to do it, so we're going to take about a 15-minute break.  Hang in there, guys.  I'll be back. We're going to take a recess and we'll be back.  Thank you all.

(Recess taken, 3:58 to 4:13 p.m.)

THE COURT:  Do we have Mr. Salem?  There he is.

Okay.  Mr. Salem, able to hear me?

MR. SALEM:  I am, Your Honor.

THE COURT:  Okay.  Thank you.

The record should indicate we're back on the record in the matter of United States of America versus Steven Seeger, Case Number 1:24-CR-42.  We've taken just about a 15-minute break.  I apologize to the parties.  I've always had that scheduled at 4:00 and -- but we've taken care of it, so we're back on.

We left off talking about the sentencing guidelines. I think I finished with advising you, Mr. Seeger, that you have a right to testify at your sentencing hearing if you so desire. Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now we're going to talk about your appellate rights, and they're on there on the -- paragraph eleven, and it is on page -- well, starts on the bottom of page 4, goes on to page 5.

And we've already talked a bit about your right to

appeal, but do you understand, Mr. Seeger, that in your plea agreement that you have agreed to give up your right to appeal your sentence under many circumstances. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And again, let me just say this exception right in the beginning. In paragraph 11D of the plea agreement you are reserving limited ability to appeal the adverse rulings on your motions to suppress, so you've preserved that, but otherwise you're waiving your appellate rights. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: So Mr. Seeger, everyone does have a right to -- found guilty of a crime in District Court has the right to appeal their conviction and sentence to the Fourth Circuit Court of Appeals in Richmond. A three-judge panel will review that conviction and sentence to see if it was done correctly. They'll also certainly consider any motion you may -- or appeal you may file with the Court regarding the adverse ruling on your motion to suppress. So do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Paragraph 11A, you've given up your right to appeal your sentence on any grounds whatsoever. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT:  Paragraph 11B, you've given up your right to appeal your -- I'm sorry, 11A is you've given up your right to appeal your conviction on any grounds whatsoever.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And 11B is that you've given up your right to appeal your sentence on any grounds whatsoever, and that includes the length, whatever forfeiture they may have, or whatever penalties or fines there may be.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand then that you would only have the right to appeal your guilty plea if you believed it was unlawful or involuntary or that there was some other fundamental defect in the proceedings.  Do you understand that, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  As you sit here today, do you consider your guilty plea to be lawful?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you consider it to be voluntary?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you know of any fundamental defects in these proceedings so far?

THE DEFENDANT:  No, sir.

THE COURT:  Mr. Seeger, do you understand that everyone has the right to challenge their conviction or sentence or manner in which it was determined in a postconviction proceeding, sometimes called a habeas corpus or collateral attack, and that's another way that the law gives you to challenge your sentence or conviction.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  But do you also understand in paragraph 11C that you've knowingly and expressly waived that right to challenge your conviction, your sentence, if it was within the binding range of imprisonment, not less than 15, not more than 30 years, or the manner in which it was determined in any postconviction proceeding.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand then that your only legal remedies on appeal or collateral attack would be for claims of ineffective assistance of counsel -- that has to do with the conduct of your attorneys -- or prosecutorial misconduct.  That has to do with the conduct of Mr. Salem, Ms. Crockett, or anyone else in the US Attorney's Office.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  As we sit here today, do you know of any evidence that would suggest in any way that your lawyers have

been ineffective in representing you?

THE DEFENDANT:  I'll take the Fifth.

THE COURT:  I don't know if that was an attempt to be humorous or --

THE DEFENDANT:  I will say no, but I will -- I mean, I definitely think there's some prosecutorial misconduct that my lawyers didn't want to pursue, and I may pursue that later. I don't know.

THE COURT:  Well -- and I'll have to see what the US Attorneys think about it, but let's go back to this.  I -- no question, at least from what I see, had a lot of discussions with your lawyers.  You've been before me.  I mean, this is important, because if you are, I need to know whether you have -- whether you feel you have claims and would make claims that your lawyers have been ineffective representing you based upon what you know up to this date, at this time.

THE DEFENDANT:  No.  It's just the whole sentence. It doesn't matter.  I can --

THE COURT:  Well, no.  There's a -- now, I haven't gotten to the prosecutorial misconduct.

THE DEFENDANT:  No.  I will say I don't know of any evidence of ineffective assistance of counsel.  I was referring to the whole sentence.

THE COURT:  Okay.

THE DEFENDANT:  Yes.

THE COURT:  So as you sit here today, do you then know of any evidence that would suggest that there is -- by Mr. Salem, Ms. Crockett, or anyone else in the US Attorney's Office?  This the US Attorney's Office.  This does not have to do with what happened in the state, because I'm just taking care of the federal.  Do you know of any evidence of prosecutorial misconduct in that regard?

THE DEFENDANT:  Not presently.  I was not referring to the state case.

THE COURT:  Okay.  Well, and I didn't know.  But in regard to the US Attorney's Office, do you have any evidence of prosecutorial misconduct?

THE DEFENDANT:  Not presently.

THE COURT:  Okay.  And now, just let me say when we get to it, now, if there's something afterwards, you couldn't have never known of it up to now, but -- because you couldn't have, but up till now, if you understand you've, in essence, waived that, if anything you come up with factually that has occurred beforehand.  Do you understand that?

THE DEFENDANT:  Yes.  Yes.

THE COURT:  Okay.  Have you discussed the waiver of these important appellate rights with your lawyers, Mr. Seeger?

THE DEFENDANT:  Yes.  I understand them.

THE COURT:  Having done so, do you still wish to waive those rights?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Dyer, do you believe your client fully understands the importance of the rights he's waiving?

MR. DYER:  I do, Your Honor.

THE COURT:  Mr. --

MR. SHEEHAN:  I concur with that, Your Honor.

THE COURT:  Thank you, Mr. Sheehan.

Mr. Seeger, do you understand with few exceptions, any notice of appeal must be filed within 14 days of judgment being entered in your case.  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, I find that you understand the nature of the charge, the consequences of your guilty plea, and the important appellate rights that you've waived and also that you've preserved in regard to your motion to suppress.

I do want to talk to you about some other constitutional rights.  Mr. Seeger, do you understand that you have a right to continue to plead not guilty and go to trial in this matter.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that by pleading guilty here today that -- and when you do plead guilty and the Court accepts it, you then give up your right to a speedy and public trial by jury.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT: Do you understand that by pleading guilty, you give up your right to force the government to come forward with witnesses and evidence to prove your guilt. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand you would have been presumed innocent till the government presented enough evidence to satisfy both a judge and a jury of your guilt beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that when you admit your guilt, as you've done here today, that you relieve the government of the burden of proving your guilt?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you would have had the right to the assistance of counsel, your lawyers, at every stage of trial?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that you and your attorneys, Mr. Dyer, Mr. Sheehan, that you would have had the right to confront and cross-examine your accusers, witnesses called by the government, to test the truth of what they said. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You understand by pleading guilty, you

give up that right of cross-examination?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that had you desired to go to trial and you wished to call witnesses, you would have been entitled to the services of the US Marshal to bring witnesses to court under subpoena?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand that by pleading guilty, you give up your right to call witnesses except at your sentencing hearing?

THE DEFENDANT:  Yes, sir.

THE COURT:  We've talked about this next one a lot, Mr. Seeger.  Do you understand that you would have had the right to move to suppress, and that means to file a motion to keep away from a jury's hearing and consideration any evidence of any nature that had been illegally or unlawfully obtained. And you understand that right and, in fact, you exercised it and filed a motion through your attorneys; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand that had you desired to go to trial, Mr. Seeger, you would have had the right to testify at trial?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you also understand, though, that you cannot be compelled or forced to testify?

Cindy L. Knecht, RMR/CRR/CBC/CCP
PO Box 326  Wheeling, WV  26003  304.234.3968

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand you would have had the right to go to trial and remain silent.  And what that means is not to take the witness stand or not to call any witnesses or not to present any evidence whatsoever on your own behalf?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  I saw you nod, Mr. Seeger.  It's important that you answer orally.

Do you understand the Court would have instructed and told the jury that they could not convict you because of the exercise of your constitutional right to remain silent, but only based on an offer of proof from the government of your guilt beyond a reasonable doubt?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that you give up your right to a unanimous verdict from a jury when you plead guilty, as you've done here today?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Dyer, do you believe that your client fully understands the consequences of his guilty plea and the important constitutional rights he gives up by doing so?

MR. DYER:  I do, Your Honor.

THE COURT:  Mr. Sheehan?

MR. SHEEHAN:  I concur, Your Honor.

THE COURT:  Mr. Seeger, I find that you understand

the constitutional and other legal rights that you're giving up by pleading guilty.

Now, knowing all of these things, Mr. Seeger, do you still wish to plead guilty at this time?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, has anyone forced you, threatened you, coerced you, or intimidated you, or just talked you into entering a guilty plea against your will?

THE DEFENDANT:  No, sir.

THE COURT:  Are you acting voluntarily and of your own free will in entering this guilty plea?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you pleading guilty because you are guilty of the crimes charged in Count 1 and 4 of the indictment?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, has anyone promised you or told you something that is different from what I have told you today?

THE DEFENDANT:  No, sir.

THE COURT:  Are the only promises made to you the promises in the written plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you pleading guilty to protect anyone?

THE DEFENDANT:  No, sir.

THE COURT:  Has anyone promised or predicted the exact sentence which will be imposed upon you in this matter?

THE DEFENDANT:  I am pleading guilty to keep -- like I said about the forcing people to see that in front of these girls.  That's part of it.

THE COURT:  I understand.

THE DEFENDANT:  But yes, sir.

THE COURT:  Well, the question was, has anyone predicted the exact sentence that will be imposed upon you?

THE DEFENDANT:  No, sir, no.  No one has predicted that.

THE COURT:  Let's go back -- are you pleading guilty to protect anyone?  At least my understanding has been, Mr. Seeger, that part of your -- everyone has different reasons for -- a variety of reasons for pleading guilty, one of which is they desire to protect certain people.  And is that what you were getting at?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  You understand at this time, Mr. Seeger, no one can tell you what the exact sentence will be?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, have you been able to fully understand what is going on in these proceedings today?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, I find your guilty plea is voluntary.

This is what you want to do, Mr. Seeger; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.

THE DEFENDANT:  Did I understand you correctly that I have 14 days to object to it?

THE COURT:  So you did -- you mean -- there are two things.  I will do a written report and recommendation recommending that the Court accept your plea of guilty.  That will go out to both parties.  Anytime I do a report and recommendation, it's subject to review by the Court.  And so if -- and if you do file objections, the Court will take it into consideration and determine whether to accept it or not. That'll be up to the Court.  And you can talk to your lawyers about that.

Now, as to the notice of appeal, that's within 14 days, and it's actually a -- you seem like you've done a lot of research, but there's --

THE DEFENDANT:  Sentencing hearing.

THE COURT:  Yeah, from the judgment, the Court will enter a judgment.  That's 14 days from then.  And the notice of appeal's really a very short document.  You just file a notice,

and then there are more significant things that happen after.

So Mr. Seeger, at this time do you have any questions or second thoughts about entering a plea of guilty?

THE DEFENDANT:  No, sir.

THE COURT:  You want me to recommend to the Court that they accept your plea of guilty?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  You've spent a lot of time thinking about this, haven't you?

THE DEFENDANT:  Yes, sir.

THE COURT:  And I've given you, I think, my plea script, so you knew what I was going to be asking you, right?

THE DEFENDANT:  Yes, sir.

THE COURT:  If you would please stand, Mr. Seeger.

Mr. Seeger, how do you plead to Count 1 of the indictment, coercion and enticement of a minor for sex, do you plead guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  As to Count 4, production of child pornography, how do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  You all may be seated.  And the record should reflect the guilty plea by Mr. Seeger to Count 1 of the indictment, coercion and enticement of a minor for sex; Count 4, production of child pornography.

In the case of the United States of America versus Steven Seeger, I find that Mr. Seeger's fully competent and capable of entering an informed plea; that there is a sufficient factual basis for his plea of guilty; that he understands the nature of the charge and the consequences of a guilty plea to the charge; that Mr. Seeger understands the constitutional and other legal rights that he gives up because of his plea; and that Mr. Seeger's plea is voluntary.

And while I defer accepting the terms of the plea agreement -- this is what I was talking about, Mr. Seeger. While I defer accepting the terms of the plea agreement and adjudging you guilty to the sentencing court -- that's what Judge Kleeh does -- I will enter a written report and recommendation recommending that Judge Kleeh accept your guilty pleas to Count 1 and 4.

Now, Mr. Seeger, the sentencing court must consider the following factors when determining the sentence that you will receive: one, the nature and circumstances of the offense; two, your history and characteristics; three, the necessity of punishing you, deterring you, protecting the public from you, or providing you with training, medical care, or other treatment; four, the kinds of sentences and the sentencing range established by the guidelines; five, the need to give defendants with similar criminal records similar sentences; and six, the need to provide restitution to any victims of the

offense.  And we've talked about a lot of those things, Mr. Seeger.  Now, again, it's the Court's decision, but the kinds of sentences and the sentencing range established by the sentencing guidelines and the need to give defendants with similar criminal records similar sentences.

So do you understand those factors the Court will consider?

THE DEFENDANT:  Yes, sir.

THE COURT:  In order to help the Court consider these factors, probation will do their presentence investigation.  They'll prepare the report.  You'll have a chance to comment on it, as well as the government.

Now, you must not commit any crimes between now and sentencing, because if you do, there are additional punishments that may be imposed for committing additional crimes.  Do you understand that, Mr. Seeger?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Seeger, pursuant to 6A1 of the United States Sentencing Guidelines, probation will conduct a presentence investigation of you.  They'll prepare a draft presentence investigation report and they'll disclose its contents to the government and to you, Mr. Seeger.

I further direct that the probation officer and all parties comply with Federal Rule of Criminal Procedure 32, US Sentencing Guideline 6A1.2 regarding deadlines for disclosure,

objections, and departure or sentencing statement requirements.

Now, the sentencing court will set this matter for sentencing, and when it does so, Mr. Seeger, the Court will enter an order to tell you when it will be.  It'll take -- you've met Judge Kleeh.  It'll take place before Judge Kleeh, the second floor of this courthouse.

Mr. Dyer, Mr. Sheehan, and certainly, Mr. Salem, if you'll pass this this on to Ms. Crockett, if you anticipate a lengthy sentencing hearing, please notify the Court so that an adequate amount of time can be scheduled for it.

So did you have anything further, Mr. Dyer or Mr. Sheehan?

MR. DYER:  No, sir.

MR. SHEEHAN:  No, sir.

THE COURT:  Mr. Salem, do you have anything further?

MR. SALEM:  Nothing further from the government. Thank you, Your Honor.

THE COURT:  Certainly appreciate you being available today for this and assisting Ms. Crockett.

Any questions before we conclude, Mr. Seeger?

THE DEFENDANT:  No, sir.

THE COURT:  Okay.  By the way, Mr. Seeger, I've -- I want you to know this.  I don't think in any way the questions that you have, I don't find them in any way any desire to be difficult in the least bit.  I think that you're a bright man

and that you know there are many laws and consequences there are a lot of us that just don't agree with, but it's what it is.  And we can only do what we can within the system that we have, but --

THE DEFENDANT:  It's not that I don't agree with laws and consequences.  I just don't believe that two adults should have an argument and one person goes to jail for 15 years.

THE COURT:  Well --

THE DEFENDANT:  But that's the United States now, so okay.

THE COURT:  That's where it is right now.  So anyway, if there's nothing further, remand you to the custody of the US Marshal pending further proceedings.

Thank you all.  Have a good day.

(Proceedings concluded at 4:35 p.m.)

CERTIFICATE


I, Cindy L. Knecht, Registered Professional Reporter and Official Reporter of the United States District Court for the Northern District of West Virginia, do hereby certify that the foregoing is a true and correct transcript to the best of my ability of the taped proceedings had in the above-styled action on May 12, 2025, as reported by me in stenotypy.

I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

Given under my hand this 24th day of November 2025.

/s/Cindy L. Knecht
_____
Cindy L. Knecht, RMR/CRR
Official Reporter, United States
District Court for the Northern
District of West Virginia
- - -